**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

COMMONWEALTH PROPERTY
ADVOCATES, LLC,

      Plaintiff - Appellant,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

      Defendant - Appellee.
_____

COMMONWEALTH PROPERTY
ADVOCATES, LLC,

      Plaintiff - Appellant,

v.

BAC HOME LOANS SERVICING, LP,
formerly known as Countrywide Home
Loans Servicing, L.P.; RECONSTRUCT
COMPANY, a Texas corporation,

      Defendants - Appellees.
_____

COMMONWEALTH PROPERTY
ADVOCATES, LLC,

      Plaintiff - Appellant,

No. 10-4182
(D.C. No. 2:10-CV-00340-TS)
(D. Utah)

No. 10-4193
(D.C. No. 2:09-CV-01146-DB)
(D. Utah)

v.

FIRST HORIZON HOME LOAN
CORPORATION; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.,

       Defendants - Appellees.

No. 10-4215
(D.C. No. 2:10-CV-0375-DB)
(D. Utah)

---

**ORDER**

---

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

These matters are before the court on appellees' *Joint Motion To Publish*. We also have a response from the appellant. Upon consideration of both pleadings, the request to publish is granted. The decision shall be reissued as a published opinion. The clerk is directed to attach a copy of this order to the newly published version. In addition, a copy of this order shall stand as a supplement to the mandate which issued originally on January 17, 2012.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

2

FILED
United States Court of Appeals
Tenth Circuit

December 23, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT
_____

COMMONWEALTH PROPERTY
ADVOCATES, LLC,

      Plaintiff-Appellant,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

      Defendant-Appellee.

No. 10-4182

_____

COMMONWEALTH PROPERTY
ADVOCATES, LLC,

      Plaintiff-Appellant,

v.

BAC HOME LOANS SERVICING,
LP, formerly known as Countrywide
Home Loans Servicing, L.P.;
RECONTRUST COMPANY, a Texas
corporation,

      Defendants-Appellees.

No. 10-4193

_____

COMMONWEALTH PROPERTY
ADVOCATES, LLC,

      Plaintiff-Appellant,

v.

FIRST HORIZON HOME LOAN
CORPORATION; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.,

No. 10-4215

Defendants-Appellees.

_____

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. Nos. 2:10-CV-00340-TS, 2:09-CV-01146-DB, 2:10-CV-0375-DB)**

_____

E. Craig Smay, Salt Lake City, Utah, for Plaintiff-Appellant.

JoAnn Sandifer, (Michael D. Mayfield and Matthew M. Cannon, Ray Quinney & Nebeker P.C., Salt Lake City, Utah, and Joseph F. Yenouskas, Goodwin Proctor LLP, Washington, D.C., on the brief) for Defendants-Appellees.

_____

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.[**]

_____

**BALDOCK**, Circuit Judge.

_____

Plaintiff Commonwealth Property Advocates, LLC, acquired title to three pieces of real property in Utah from three defaulting borrowers. Plaintiff then filed three suits in diversity against various Defendants which held interests in the property, seeking to prevent foreclosure. Plaintiff argued Defendants had no authority to foreclose because the notes in each case had been securitized and sold on the open market. Because the security follows the debt, Plaintiff argued, once Defendants sold the security they could

---

[*]

[*] This panel heard oral argument in appeal 10-4215 on November 17, 2011. Defendants in appeals 10-4182 and 10-4193 waived oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). Appeals 10-4182 and 10-4193 are therefore ordered submitted on the briefs.

2

not foreclose absent authorization from every investor who had purchased an interest in the securitized note. Defendants in all three cases filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and the district court granted those motions. Plaintiff appealed, and we now consolidate these cases for purposes of opinion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

The following facts are found in Plaintiff's complaints and the attached exhibits. In appeal 10-4182, the original borrower received two loans totaling $309,000 from American Sterling Bank, secured by real property in Bountiful, Utah. Each security interest was memorialized by a promissory note and a deed of trust naming as beneficiary Defendant Mortgage Electronic Registration Systems ("MERS") in its capacity as nominee for American Sterling.[1] Each deed of trust also contained a provision giving MERS "the right to foreclose and sell the Property" and to take other actions on behalf of the lender. The complaint alleges that "[t]he obligations on the Notes were pooled and

---

[1]  MERS is a private electronic database that tracks the transfer of the beneficial interest in home loans. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1038 (9th Cir. 2011). "MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." Id. at 1039. MERS is designated in the deed of trust as a "nominee" for the lender and the lender's successors and assigns as well as the "beneficiary" of the deed. Id. MERS thus holds legal title to the security interest. Id. "If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf." Id. Thus, no recordation takes place unless the trust deed is transferred to an entity that is not a member of MERS. Id.

sold by Lender . . . as securities to numerous investors unknown."[2] The original borrower defaulted and MERS served a notice of default on the property. Subsequently, Plaintiff acquired title to the property by way of quitclaim deed. Plaintiff filed suit against MERS alleging "causes of action" for (1) "stay of pending sale," (2) "estoppel/declaratory judgment," (3) declaratory judgment, (4) quiet title, and (5) "refund, fees and costs." Defendant MERS moved to dismiss for failure to state a claim, and the district court granted the motion. Plaintiff appealed.

In appeal 10-4193, the original borrower received $1,135,400 from GreenPoint Mortgage Funding to acquire real property in Sandy, Utah. In exchange, the borrower executed a promissory note in favor of GreenPoint. The borrower also executed a deed of trust in favor of Meridian Title Company. The trust deed named MERS as both the beneficiary and GreenPoint's nominee and expressly gave MERS the right "to foreclose and sell the property." Defendant BAC Home Loans Servicing later became the servicer of the note, and Defendant ReconTrust was named as substitute trustee. According to the complaint, "the obligation under the Note was pooled and sold by Lender . . . as securities to numerous investors unknown." When the original borrower defaulted, ReconTrust served a notice of default and intent to sell. Plaintiff acquired title to the property via quitclaim deed about seven weeks later. Plaintiff then filed suit against BAC Home Loans and ReconTrust asserting four "causes of action" labeled (1) "estoppel/declaratory

---

[2]       This process of pooling loans and selling them to investors on the open market is known as securitization. MERS facilitates the securitization process by allowing promissory notes to be transferred without costly recordation in local land records. <u>See</u> <u>BAC Home Loans Servicing, L.P. v. White</u>, 256 P.3d 1014, 1017 (Okla. Civ. App. 2010).

4

judgment," (2) declaratory judgment, (3) quiet title, and (4) "refund, fees and costs." Defendants filed a motion to dismiss for failure to state a claim, and the district court granted the motion. Plaintiff then filed a "motion to reconsider" pursuant to "Rules 59 and 60, FRCP" because the district court "appears to have overlooked the applicable statute and the facts as admitted herein." The district court denied this motion as well, concluding Plaintiff had not shown obvious error or introduced new, previously undiscoverable evidence. Instead, the court said, Plaintiff's motion "raise[d] new arguments not addressed in the briefing to the court and rehashe[d] arguments already considered by the court." The court entered its order denying the "motion to reconsider" on October 1, 2010. On October 29, 2010, Plaintiff filed a notice of appeal, stating that "defendant [sic] appeals . . . the decision of the District Court herein entered October 1, 2010."

In appeal 10-4215, the original borrower executed two promissory notes totaling $1,250,000 in favor of Defendant First Horizon Home Loan Corporation. The borrower secured these notes by two deeds of trust in property in Alpine, Utah. The trust deeds named Meridian Title Company as trustee. Both deeds of trust designated MERS as the beneficiary and as First Horizon's nominee, and both gave MERS the right to foreclose and sell the property on First Horizon's behalf. First Horizon pooled the obligations on the notes and sold them as securities to various investors. First Horizon also substituted eTitle as the trustee, but did not initially record the substitution. The original borrower defaulted on the loan, and trustee eTitle filed a notice of default. The original borrower then quitclaimed the property to Plaintiff. Plaintiff sued First Horizon and MERS,

5

asserting "causes of action" for (1) "stay of pending sale," (2) "estoppel/declaratory judgment," (3) declaratory judgment, (4) quiet title, and (5) "refund, fees and costs." The district court granted Defendants' motion to dismiss, and Plaintiff appealed.

Plaintiff's complaints are difficult to construe, but they appear to raise three substantive claims for relief.[3] First, under the heading of "Estoppel/Declaratory Judgment," Plaintiff alleges Defendants failed to provide information regarding the interests of "persons to whom the Note and/or Trust Deed may be assigned" when requested to do so by Plaintiff. Plaintiff alleges the failure to provide this information subjects it "to risks, abuses, and prejudice" and "render[s] impossible proper discharge of the obligation on the Note." Thus, Plaintiff seeks to estop Defendants from asserting that the notes are in default or that they hold the power of sale under the trust deeds. Plaintiff also requests a declaratory judgment that Defendants "lack any [enforceable] interest in the trust deed." In 10-4215, Plaintiff makes several additional allegations under this cause of action. Plaintiff alleges Defendants violated a number of Utah statutory provisions, Utah Code Ann. §§ 57-1-22(3)(a); 57-1-22(1)(a); 57-1-23; and 57-1-21(4). Plaintiff also alleges, "First Horizon is attempting to foreclose on the subject property without being the Beneficiary of record for the first position Trust Deed."

In its second substantive claim, Plaintiff seeks a declaratory judgment that Defendants "lack any interest under the Trust Deed which may be enforced by . . . sale of the subject property." Plaintiff alleges that, because Defendants transferred the notes to

_____

[3] Plaintiff's first claim, for stay of a foreclosure sale "pending resolution of issues of rights under the security," was rendered moot by the district court's final judgment, which resolved the "issues of rights under the security." Plaintiff did not seek a stay of foreclosure pending appeal. Nevertheless, Defendants appear to have voluntarily postponed foreclosure in all three cases.

6

subsequent assignees, Defendants "lacked authority to declare a default" or to sell the subject property and distribute any proceeds. The complaints allege that because the investors in each securitized note were not assigned the corresponding trust deed, "the obligation under the Note has . . . become unsecured, and the Note and Trust Deed, may not be foreclosed." Plaintiff further claims it is "a bona fide purchaser for value of the subject property without notice of any claim" by persons to whom Defendants assigned the notes.

Plaintiff's third claim, seeking to quiet title, rests upon two grounds. First, Plaintiff asserts that Defendants' failure "to retain any interest in the obligation under the Note voided any title or power they might have under the Trust Deed, and rendered said Trust deed unenforceable by them." Second, Plaintiff alleges that "[r]ecordation of the plaintiff's deed to the subject property prior to the recordation of any assignment of the Trust Deed, renders any such assignments void and unenforceable against the subject property" under Utah Code Ann. §§ 57-3-102 and 57-3-103. Plaintiff seeks to quiet title in its favor, thus "freeing title to the subject property of the lien of the Trust Deed and leaving any obligation under the Note unsecured . . . ."[4]

Plaintiff appears to raise only one issue on appeal.[5] Plaintiff argues securitization

_____

[4] Plaintiff's final claim for "refund, fees and costs" appears to be a novel attempt to request sanctions as part of a complaint. Plaintiff alleges that Defendants' "pretense of authority to foreclose, or attempt to foreclose, under the Trust Deeds were [sic] fraudulent." Plaintiff alleges any assertions by Defendants that they were entitled to enforce the obligations on the notes "would constitute a fraud upon the court" subject to sanctions under Utah Code Ann. § 78-5-825. Thus, Plaintiff asked the court to order Defendants to pay Plaintiff's costs. This claim has no plausible legal basis.

[5]

7

of a note renders the holder of the underlying trust deed and its nominees unable to foreclose absent authorization by *every* investor holding an interest in the securitized note. Plaintiff contends that any authorization to foreclose contained in the trust deeds is invalidated by Utah Code Ann. § 57-1-35. This claim appears to relate to Plaintiff's second and third substantive claims for relief, both of which challenged Defendants' authority to foreclose, but which sought different forms of relief (a declaratory judgment and quiet title). Although Plaintiff's complaints appeared to raise several other claims, Plaintiff has not raised those claims on appeal. An appellant's opening brief must set forth "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). Consequently, "[a]n issue or argument insufficiently raised in the opening brief is deemed waived." Becker v. Kroll, 494 F.3d 904, 913 n.6 (10th Cir. 2007). Because Plaintiff has only appealed with respect to Defendants' authority to foreclose, we will not address the

---

Plaintiff's statements of the "issues on appeal" provide little help in determining what exactly Plaintiff is appealing. In appeal 10-4182, for example, Plaintiff states the "issues on appeal" as follows: (1) "Was the District Court bound by the plain terms of the documents executed by the parties, including that making enforcement by the owner of the debt option in case of any non-payment?"; (2) "Was the District Court required to deem established on motion to dismiss the factual allegations of the Complaint?"; (3) "Was the District Court required to take cognizance of proffered documents showing the sale of the subject loan in the securitization scheme?"; (4) "What is the effect of [Utah Code Ann. § 57-1-35] where loans are sold for purposes of securitization?"; (5) "Are cases in which transfer of the debt is not shown applicable?"; (6) "Where the documents make enforcement optional in any case of non-payment, the loan has previously been sold, and the new owner takes no step to enforce, may the District Court authorize foreclosure by the original lender which sold the loan and was paid off?" Appeal 10-4215 added the following unhelpful issue statement: "5. May the district court rely upon misquotation of an irrelevant statement in an inapposite case?"

8

remaining claims.[6]

## II.

We first address Defendants' arguments challenging our jurisdiction. In appeal 10-4193, Defendants argue we cannot consider the merits of the 12(b)(6) motion because Plaintiff appealed only the denial of its "motion to reconsider." In appeal 10-4215, Defendants argue Plaintiff lacks standing to sue, because Plaintiff's injury is self-imposed and because Plaintiff is seeking to assert a third party's rights.

## A.

We may construe Plaintiff's motion to reconsider as relevant to appeal 10-4193 either as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) or as motion for relief from the judgment under Fed. R. Civ. P. 60(b). If a motion is timely under both rules, how we construe it depends upon the reasons expressed by the movant. Jennings v. Rivers, 394 F.3d 850, 855 (10th Cir. 2005). A Rule 59(e) motion is the appropriate vehicle "to correct manifest errors of law or to present newly discovered evidence." Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997) (quoting Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992)). A Rule 60(b) motion is appropriate for, among other things, "mistake, inadvertence, surprise, or excusable neglect" and "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed. R. Civ. P. 60(b)(1),(2). The

---

[6] Plaintiff appears to raise another claim in its opening brief. Plaintiff argues in its brief that foreclosure would be invalid because Defendants failed to comply with the trust deeds' requirement that Defendants give a notice of acceleration and a thirty-day opportunity to cure before invoking the trustee's statutory power of sale. Plaintiff failed to plead this claim in its complaint, and therefore we will not consider it on appeal. See Smith v. Cummings, 445 F.3d 1254, 1258 (10th Cir. 2006).

9

district court did not construe Plaintiff's motion as either a Rule 59 or Rule 60 motion, but simply denied it. Plaintiff's motion was filed within fourteen days of the district court's order, meaning it was timely under Rule 59(e). The motion appears to be properly characterized as a Rule 59(e) motion, because Plaintiff claimed the district court "overlooked the applicable statute and the facts." We accordingly construe it as a Rule 59(e) motion. "[A]n appeal from the denial of a motion to reconsider construed as a Rule 59(e) motion permits consideration of the merits of the underlying judgment, while an appeal from the denial of a Rule 60(b) motion does not itself preserve for appellate review the underlying judgment." Hawkins v. Evans, 64 F.3d 543, 546 (10th Cir. 1995). Because we construe Plaintiff's motion as one brought under Rule 59(e), we may consider the merits of the district court's underlying dismissal.

## B.

Defendants next challenge Plaintiff's standing as relevant to appeal 10-4215. The doctrine of standing has both a constitutional and a prudential component. To have standing under Article III, Plaintiff must assert an injury that is (1) concrete, particularized, and actual or imminent, (2) fairly traceable to the Defendants' challenged action, and (3) redressable by a favorable ruling. Horne v. Flores, 129 S. Ct. 2579, 2592 (2009). Defendants First Horizon and MERS argue Plaintiff's alleged injuries are not "fairly traceable" to any conduct by Defendants because Plaintiff's injuries "resulted from [Plaintiff's] *own decision* to knowingly purchase a trust deed-encumbered property from a defaulting borrower, not the result of any conduct by [Defendants]." Defendants cite Nova Health Systems v. Gandy, 416 F.3d 1149, 1156 n.8 (10th Cir. 2005), in which we

10

characterized an abortion provider's "injury" as self-inflicted because it resulted from the provider's decision to adopt stricter parental notification procedures than the challenged statute required. This case differs from <u>Gandy</u> because the asserted injury—an unauthorized foreclosure—was initiated by Defendants, not Plaintiff. Unlike the plaintiff in <u>Gandy</u>, Plaintiff has brought no additional injury upon itself. Plaintiff's decision to purchase the encumbered property in no way deprived it of the right to challenge an allegedly unauthorized foreclosure.[7] Thus, Plaintiff has Article III standing.

One element of prudential standing is "the general prohibition on a litigant's raising another person's legal rights." <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 12 (2004). Defendants in 10-4215 argue Plaintiff is attempting to assert the rights of a third party, the original borrower on the mortgage. Defendants cite <u>Shire Development v. Frontier Investments.</u>, 799 P.2d 221, 222–23 (Utah Ct. App. 1990), for the proposition that "a plaintiff lacks standing to sue about a contract to which he is not a party." Plaintiff has not, however, asserted any contractual rights. Instead, Plaintiff alleges

---

[7] Defendants also cite an unpublished district court opinion, <u>D.M. Johnson Family Trust v. Countrywide Home Loans, Inc.</u>, 2009 WL 3615690 (D. Utah Oct. 28, 2009). There, defaulting borrowers transferred their property to straw purchasers for $1.9 million, lent to the purchasers by Countrywide, with the agreement that the original borrowers would make the payments on the Countrywide loan. When the borrowers again defaulted, they brought suit against Countrywide, alleging that Countrywide engaged in predatory lending practices. The district court held that the original defaulting borrowers lacked standing. There was no injury, the court said, because Countrywide's loan to the straw purchasers actually *benefitted* plaintiffs. Furthermore, the court said no causal nexus existed between Countrywide's provision of the loan and the plaintiffs' injury, because the plaintiffs' failure to pay precipitated foreclosure. Unlike in <u>Countrywide</u>, the alleged injury in this case is not a predatory loan that benefitted Plaintiff, but rather a foreclosure on Plaintiff's property. So in addition to having no precedential value, <u>Countrywide</u> is inapposite.

Defendants have no legal or contractual authority to foreclose. Because Plaintiff is the current owner of the real property, a foreclosure would injure Plaintiff directly. Therefore, Plaintiff also has prudential standing, and we may proceed to the merits.

III.

We review a Rule 12(b)(6) dismissal de novo, accepting as true all well-pleaded factual allegations in the complaint and viewing them in the light most favorable to the plaintiff. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). In evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) dismissal, "we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Forest Guardians v. Forsgren, 478 F.3d 1149, 1160 (10th Cir. 2007). Dismissal is appropriate if the law simply affords no relief. See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 712 (10th Cir. 2006) (observing that dismissal under 12(b)(6) was appropriate where a federal statute provided no remedy for the alleged conduct).

Our first task is to determine exactly what cause or causes of action Plaintiff is asserting. Plaintiff's "causes of action" listed in its complaints are actually forms of relief. Because Plaintiff asserted no federal claims and brought this case in diversity, its

claims for relief must be grounded in state law. Plaintiff, however, asserted no common law basis for its claims and waived its only claims based on Utah statutes.[8] The claim Plaintiff pursues on appeal is simply that Defendants had no authority to foreclose because they transferred the debt. The most analogous state law cause of action appears to be an action for wrongful foreclosure. See Timm v. Dewsnup, 990 P.2d 942, 945 (Utah 1999) (remanding for the trial court "to address the merits of [plaintiff's] claim for the wrongful foreclosure of the trust deed property"). The elements of this cause of action are unclear, but "[a] party may have an apparently valid trustee's sale set aside for irregularity, want of notice, or fraud if there is evidence sufficient to overcome the presumption of its validity." Occidental/Neb. Fed. Sav. Bank v. Mehr, 791 P.2d 217, 221 (Utah 1990). We construe Plaintiff's properly preserved claim as one for wrongful foreclosure under Utah law. Our next question is whether the facts alleged are sufficient to support a claim for relief.

Utah law relating to trust deeds gives a trustee the power to sell the trust property if the borrower breaches an obligation relating to the secured property. Utah Code Ann. § 57-1-23. In addition, the beneficiary may elect to have the foreclosure conducted according to the "law for the foreclosure of mortgages on real property." Id. The trustee may exercise the power of sale even "without express provision for it in the trust deed." Id. Thus, under § 57-1-23 the only trustee Defendant in this case, ReconTrust, had apparent authority to foreclose. Additionally, all the trust deeds in this case said "MERS

---

[8] Plaintiff's complaint in appeal 10-4215 alleged violations of Utah Code Ann. §§ 57-1-22(3)(a); 57-1-22(1)(a); 57-1-23; and 57-1-21(4), but Plaintiff has not renewed these allegations on appeal.

(as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of [Lender's] interests, including, but not limited to, the right to foreclose and sell the Property." This language appears to give MERS the right to foreclose on behalf of not only the lenders but also the lender's successors and assigns.[9] As the district court said, "By the clear language of the deeds of trust, MERS has the authority to foreclose and sell the property on behalf of both the original lender and the 'lender's successors.'"

Nevertheless, Plaintiff argues the trust deed provisions giving MERS this right are invalid because they conflict with Utah Code Ann. § 57-1-35. Plaintiff also appears to argue § 57-1-35 deprived ReconTrust of the power to foreclose as a trustee. Section 57-1-35 says: "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." Plaintiff argues this provision invalidates MERS's and ReconTrust's authorization to foreclose, because the sale of the note in the subsequent securitization scheme also transferred the security. Plaintiff claims Defendants can no longer foreclose because they no longer hold the security interest in the real property. According to Plaintiff, "upon sale of a loan, in a securitization or otherwise, original 'nominees,' such as MERS, lose any right to exercise any power under the trust deed . . . absent some further agreement with the new owner of the debt."[10] Under Plaintiff's

---

[9]
Although Plaintiff named BAC Home Loans Servicing as a defendant in 10-4193, the complaint in that case alleges no facts to support any culpability on BAC's part. Thus, the 12(b)(6) dismissal was clearly appropriate as to BAC Home Loans Servicing.

[10]
Defendants in appeal 10-4215 argue that the Pooling and Servicing Agreement (PSA), the document which effected the securitization, independently authorized Defendants to foreclose. Plaintiff argues that the PSA is not a sufficient "further agreement" with the investors because it does not satisfy the statute of frauds. The PSA

14

theory, the "new owners" of the debt are the investors who purchased interests in the securitized debt. Plaintiff argues MERS can only foreclose if each investor provides MERS with written authorization to do so.

The Utah Supreme Court has never addressed the effect of § 57-1-35 on the power to foreclose. While these appeals were pending, however, the Utah Court of Appeals addressed Plaintiff's arguments and interpreted § 57-1-35. Commonwealth Prop. Advocates v. Mortg. Elec. Registration Sys., Inc., 263 P.3d 397 (Utah Ct. App. 2011), cert. denied, Utah State Courts Appellate Docket No. 20100888 (Dec. 14, 2011). Commonwealth involved a suit brought by Plaintiff in Utah state court making almost identical claims and arguments to those it has put forth here. [11] The deed of trust in Commonwealth was identical to the trust deeds in these cases, and it gave MERS authority to foreclose on behalf of the lender and its assigns. 263 P.3d at 399. The Utah

---

is, in fact, irrelevant because it is not properly before us. On appeal from a 12(b)(6) motion to dismiss, we may only look at the complaint, the attached exhibits, and any document incorporated into the complaint by reference that is filed with the defendant's 12(b)(6) motion. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009); Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253–54 (10th Cir. 2005). Plaintiff did not attach the PSA to any of its complaints, and none of the Defendants attached it to their motions to dismiss. Thus, we cannot consider the document.

[11]

 Indeed, if Defendants had been afforded the opportunity to raise issue preclusion, Plaintiff's claims almost certainly would have been barred under that doctrine. Issue preclusion applies under Utah law where (1) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (2) the issue decided in the prior adjudication was identical to the one presented in the instant action; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits. Jensen ex rel. Jensen v. Cunningham, 250 P.3d 465, 477 (Utah 2011). These requirements would have been satisfied here. Defendants had no opportunity to raise issue preclusion, however, because the state court's decision was rendered after the briefing in all three appeals was concluded.

15

Court of Appeals concluded the trust deed provided sufficient authority to foreclose. The court cited approvingly a number of federal district court opinions (including the district court's opinion on appeal in 10-4215) that dismissed Plaintiff's claims because the trust deeds authorized MERS to foreclose. Id. at 402. The state court said: "We also agree with the federal district court's related rulings . . . that [Plaintiff] has failed to explain how the securitization of the Note could have revoked this language in the Deed of Trust." Id.

The state court then addressed Plaintiff's reliance on § 57-1-35. The court said, "The plain language of this statute simply describes the long-applied principle in our jurisprudence that when a debt is transferred, the underlying security continues to secure the debt." Id. at 403. The court went on:

> [W]e interpret section 57–1–35 as ensuring the basic presumption that "[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise," *see* Restatement (Third) of Prop.: Mortgages § 5.4. The plain language of the statute does nothing to prevent MERS from acting as nominee for Lender and Lender's successors and assigns when it is permitted by the Deed of Trust. Therefore, contrary to [Plaintiff]'s liberal citation of section 57–1–35, we do not interpret the statute as preventing, implying, or somehow indicating that the original parties to the Note and Deed of Trust cannot validly contract at the outset "to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in [the security instrument]" . . . .

Id. (quoting Marty v. Mortg. Elec. Registration Sys., 2010 WL 4117196 (D. Utah Oct. 19, 2010)). The court went on to "reject [Plaintiff]'s assertion that Utah Code section 57-1-35 prohibits the original parties to the Note and Deed of Trust from agreeing to have someone other than the beneficial owner of the debt act on behalf of that owner and its successors and assigns to enforce rights granted in the trust deed." Id. at 404 (internal citations and brackets omitted). The court upheld the district court's entry of summary

16

judgment against Plaintiff.[12] Id. at 405.

The Utah Court of Appeals' decision in Commonwealth effectively disposes of these three cases. "When exercising diversity jurisdiction, we apply state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). If the state's highest court has reached an issue, "[t]he federal court must defer to the most recent decisions of the state's highest court." Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003). Where the state's highest court has not addressed the issue, we still follow the state's intermediate court decisions absent "convincing evidence that the highest court would decide otherwise." Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1126 (10th Cir. 2002) (citing B.F. Goodrich Co. v. Hammond, 269 F.2d 501, 505 (10th Cir. 1959). According to the Supreme Court, "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)

We have no reason to believe the Utah Supreme Court would reach a different result than did the Utah Court of Appeals. The court of appeals' decision is based on a

---

[12] The Utah state district court in Commonwealth had converted the defendants' motion to dismiss into a motion for summary judgment because it relied on documents outside the complaint. The court of appeals affirmed the conversion, despite Plaintiff's challenge. But the court observed that "even if the district court had not converted Defendants' motion to dismiss into a motion for summary judgment, its ruling on the motion to dismiss would have produced the same result—a dismissal of [Plaintiff's] case." Commonwealth, 2011 WL 2714429 at *6.

17

straightforward reading of the statute. Even assuming Plaintiff is correct that securitization deprives Defendants of their implicit power to foreclose as holders of the trust deeds, the trust deeds *explicitly* granted Defendants the authority to foreclose. Contrary to Plaintiff's contention, § 57-1-35 in no way prohibits such an authorization. The statute merely says the transfer of a debt operates as the transfer of the security. It says nothing about who is or is not authorized to foreclose on a trust deed. As the Utah Court of Appeals said: "[T]he Deed of Trust explicitly gave MERS the right to foreclose on behalf of 'Lender and Lender's successors and assigns.' The statute does not prohibit parties from contracting for these arrangements . . . ." Commonwealth, 263 P.3d at 403. The state court's decision is consistent both with the statute and with numerous federal district court cases that have addressed the same arguments. See id. at 402 (citing cases). The Utah Court of Appeals has reinforced its decision in an even more recent appeal by Plaintiff. Commonwealth Property Advocates, LLC v. U.S. Bank Nat'l Ass'n, --- P.3d ---, 2011 WL 6091684 (Utah Ct. App. Dec. 8, 2011) (per curiam) ("Because [Plaintiff's] complaint in this case relies on the same erroneous principle raised in MERS that securitization of the note separated it from the trust deed, MERS is dispositive."). We see nothing to suggest the Utah Supreme Court would reach a different conclusion. In fact, on December 14, 2011, the Utah Supreme Court chose not to grant certiorari in Commonwealth. Thus, we defer to the Utah Court of Appeals' decision. Because Plaintiff's diversity jurisdiction claims have no legal basis under Utah law, the district court properly dismissed all three complaints under Fed. R. Civ. P. 12(b)(6). Accordingly, the judgments in appeals 10-4182, 10-4193, and 10-4215 are

18

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

19