FILED
United States Court of Appeals
Tenth Circuit

April 2, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re: DANIEL W. COOK;
YOLANDA T. COOK,

       Debtors.

————————————————

DANIEL W. COOK,

       Appellant,

v.

WELLS FARGO BANK, N.A.,
Successor to Wells Fargo Bank
New Mexico, N.A.; SCOTT GARRETT;
PAMELA GARRETT; SCOTT
GARRETT AND PAMELA JANE
GARRETT FAMILY TRUST,

       Appellees.

No. 12-2100
(No. 11-082-NM)
(B.A.P.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Daniel William Cook appeals pro se from an order of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's refusal to reconsider an order dismissing his motion for sanctions. We have jurisdiction under 28 U.S.C. § 158(d)(1), and we affirm.

## I

Cook and his now-deceased wife were the majority shareholders of Hydroscope Group, Inc. ("HGI"), a company "providing non-destructive examination and evaluation services of concrete, cast iron and ductile iron pipe, including water and sewer lines."[1] In 1996, one of HGI's related companies, Hydroscope Canada ("HCAN"), licensed its intellectual property to another HGI-related company, Hydroscope USA ("HUSA"). In 1997 and 1998, Wells Fargo Bank gave HGI a revolving line of credit and a loan totaling nearly $2 million. The loans "were secured by various types of collateral," including a security interest in the license

---

[1] The background of the proceedings culminating in this case is extensive. As this court recently observed in Cook's civil-rights case, "the long, twisted litigation history of Mr. Cook with the various parties . . . has proceeded in the New Mexico State District Court, the New Mexico Court of Appeals, the New Mexico Supreme Court, the Bankruptcy Court, the District Court, and the Tenth Circuit Court of Appeals." Cook v. Baca, No. 12-2023, 2013 WL 828814, at *1 (10th Cir. Mar. 7, 2013) (unpublished) (quoting In re Cook, No. 7-04-17704-SA, 2012 WL 5408905, at *16 (Bankr. D.N.M. Nov. 6, 2012)). Far from pursuing a "coherent" litigation path, "Mr. Cook's filings have moved the suit hither and yon—from court to court, judge to judge—forcing the parties and the courts to untangle novel, largely unsupported arguments and procedural machinations." In re Cook, 2012 WL 5408905, at *17 (quotation omitted). We recount only those facts necessary to resolve the limited issues before us on appeal.

agreement and stock in HUSA. In November 1998, Scott Garrett invested $2 million in HGI, becoming a minority shareholder and director of HGI.

In fiscal year 2000, HGI "suffered losses in excess of 1.3 million dollars," and defaulted on the Wells Fargo loans. In 2003, Scott Garrett, Pamela Garrett, and the Garrett Family Trust filed a shareholder derivative action against the Cooks in New Mexico state court, and they eventually added Wells Fargo as a defendant based on its security interest in the intellectual property. Wells Fargo then filed claims against HGI, HCAN, and another one of Cook's companies, CBM Group, Inc.

In 2004, the Cooks filed a Chapter 11 bankruptcy petition and an adversary complaint against Wells Fargo and the Garretts. The bankruptcy court abstained from deciding the adversary proceeding, however, in favor of the Garretts' ongoing state-court derivative action. The Cooks also filed a "placeholder complaint" in state court, raising the same causes of action against Wells Fargo that were raised in the adversary proceeding. That case was consolidated with the Garretts' derivative action.

In 2006, Wells Fargo moved for summary judgment against the corporate defendants in the state case, and it sought the dismissal of the Garretts' and the Cooks' claims against Wells Fargo. In late 2007 and early 2008, the Cooks and the corporate entities filed several motions for sanctions against both Wells Fargo and the Garretts, claiming that they had violated the automatic stay issued by the bankruptcy court by continuing to pursue the state-court litigation. Ultimately, these

motions were all denied for lack of standing, and Wells Fargo obtained summary judgment in state court and an order from the bankruptcy court annulling its stay with respect to any proceedings that had taken place in state court.

On March 20, 2008, the bankruptcy court converted the Cooks' case to a Chapter 7 proceeding and the court clerk mailed a computer-generated "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" to interested parties. See 11 U.S.C. § 341 (requiring the United States trustee to "convene and preside at a meeting of creditors" and to "orally examine the debtor to ensure that the debtor in a case under chapter 7" is aware of, among other things, the "consequences of seeking a discharge in bankruptcy").

On July 1, 2009, the Chapter 7 trustee submitted a report of no distribution and filed a notice of abandonment as to all remaining property of the Cooks' estate.[2] But the trustee neither sent the notice to anyone nor set a deadline for objecting to abandonment.

On July 23 and 27, 2009, Cook filed two more motions for sanctions for violations of the automatic stay issued by the bankruptcy court: one against Wells Fargo for, among other things, seeking summary judgment and for filing a motion to strike his counterclaim defenses; and one against the Garretts for "aiding and abetting Wells Fargo Bank's violations of the Automatic Stay" and continuing to pursue the state-court litigation. The bankruptcy court identified three grounds on which the

_____

[2] Mrs. Cook passed away in May 2009.

-4-

motions failed.  First, the court concluded that Cook lacked standing to pursue stay violations allegedly perpetrated against the bankruptcy estate.  Second, because the stay had been annulled, the court reasoned that there could not have been any stay violations.  Additionally, the court observed that Wells Fargo's summary judgment motion would not have violated the stay because it was "directed at non-debtors," and "at a claim brought by the Debtors."  Third, the court determined that the sanctions motions were barred by the <u>Rooker</u>-<u>Feldman</u> doctrine and collateral estoppel.

Ten days later, Cook sought reconsideration of the bankruptcy court's decision, which was denied.  He then appealed the denial of reconsideration to the BAP.  The BAP concluded that because "Cook lacked standing to bring the stay violations motions and there was no new evidence the bankruptcy court failed to consider, the bankruptcy court did not abuse its discretion in" denying reconsideration.  Cook unsuccessfully sought rehearing, then appealed to this court.[3]

**II**

"Although this is an appeal from a BAP decision, we independently review the decision of the bankruptcy court, reviewing the court's factual findings for clear error and its legal conclusions de novo."  <u>Redmond v. Lentz & Clark, P.A. (In re Wagers)</u>,

_____

[3]Although this court in Cook's recent unpublished civil-rights appeal concluded that he was collaterally estopped by the BAP's decision "from asserting that he has standing," <u>see</u> <u>Cook</u>, 2013 WL 828814, at *7-8, we reach that issue independently, as this is a direct appeal from the BAP's standing determination.

-5-

514 F.3d 1021, 1022 (10th Cir. 2007) (per curiam). Because Cook is proceeding pro se, we construe his arguments liberally, but we "do not assume the role of advocate." Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotations omitted).[4]

Generally, this court reviews the denial of a motion to reconsider for abuse of discretion. See Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009). But if the court construed the motion for reconsideration as a Rule 59(e) motion, an appeal from the denial of reconsideration "permits consideration of the merits of the underlying judgment." Commonwealth Prop. Advocates, LLC v. Mort. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011).

Cook challenges the bankruptcy court's determination that he lacked standing to pursue the alleged stay violations. "To have standing under Article III, [Cook] must assert an injury that is (1) concrete, particularized, and actual or imminent, (2) fairly traceable to the . . . challenged action, and (3) redressable by a favorable ruling." Id. at 1200-01.[5] The issue of a party's standing is a legal question we review de novo. Bixler v. Foster, 596 F.3d 751, 756 (10th Cir. 2010).

_____

[4] Cook's arguments are largely incoherent and are not aided by his scurrilous accusations directed at the Chapter 11 trustee and the parties' attorneys. We address only those arguments that are adequately briefed. See Merryfield v. Jordan, 584 F.3d 923, 925 n.2 (10th Cir. 2009).

[5] "Article III's standing requirements apply to proceedings in bankruptcy courts just as they do to proceedings in district courts." Appeal of Ill. Inv. Trust No. 92-7163 v. Allied Waste Indus., Inc. (In re Resource Tech. Corp.), 624 F.3d 376, 382 (7th Cir. 2010). Insofar as Cook claims prudential standing as an alternative to

(continued)

Cook argues that he acquired standing to challenge the alleged stay violations by virtue of the Chapter 7 trustee's July 2009 Notice of Abandonment and Report of No Distribution. "In the context of bankruptcy proceedings, it is well understood that a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." Moses v. Howard Univ. Hosp., 606 F.3d 789, 795 (D.C. Cir. 2010) (quotation omitted). However, the trustee may abandon estate property that "is burdensome to the estate or . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). "Property abandoned under § 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." Moses, 606 F.3d at 795 (quotations and alterations omitted).

But such an abandonment is possible only "[a]fter notice and a hearing." § 554(a). The purpose of the notice is to provide "an opportunity for any potential oppo[nent] to the abandonment of such property to file objections and be heard by the Court." First Carolina Fin. Corp. v. Trustee of Estate of Caron (In re Caron), 50

Article III's requirements, he is incorrect. See Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777 (9th Cir. 1999) ("To prevent unreasonable delay, courts have created an additional prudential standing requirement in bankruptcy cases: The appellant must be a 'person aggrieved' by the bankruptcy court's order." (emphasis added)); see also C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.), 636 F.3d 1257, 1260 & n.5 (10th Cir. 2011) (noting that standing is "more stringent" in bankruptcy cases (quotation omitted)).

B.R. 27, 30 (Bankr. N.D. Ga. 1984). Federal Rule of Bankruptcy Procedure 6007 implements § 554(a) as follows:

> Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

Fed. R. Bankr. P. 6007(a).

Neither the trustee's Notice of Abandonment nor the Report of No Distribution satisfies § 554(a) or Rule 6007(a). The Notice of Abandonment simply states that the trustee "gives notice that he abandons all remaining property of the estate." And the Report of No Distribution merely reflects that Cook's estate had been fully administered, that the estate had "no property available for distribution . . . over and above that exempted by law," that the trustee was requesting to be discharged from his duties, that assets worth $487,085,961 had been abandoned, and that claims worth $9,989,980 were scheduled to be discharged without payment. There were no provisions for objecting to abandonment, no indication that either the notice or the report was sent to interested parties, and there was no hearing to entertain any objections. Intent to abandon, without prior notice to creditors, is insufficient to establish abandonment. See Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 710 (9th Cir. 1986).

Cook contends that under 11 U.S.C. § 102(1), a hearing is an unnecessary component of abandonment. But § 102(1), which governs rules of construction, "authorizes an act without an actual hearing" if, among other things, "notice as is appropriate in the particular circumstances" has been "given properly." Id. In the case at bar, however, the particular notice required by § 554(a) and Rule 6007(a) was not provided. Consequently, Cook's reliance on § 102(1) is misplaced. See Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 618 (7th Cir. 2002) (observing that "section 554(a) isn't available," despite § 102(1), if "there was no notice").

Cook next argues that the § 341 "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" provided the notice required by § 554(a) and Rule 6007. That document generally explains Chapter 7 proceedings and contains a provision regarding abandonment: "Unless a request for notice is filed and served upon the trustee by a party in interest within 15 days after the date of mailing of this notice, the trustee may abandon any property deemed burdensome or of inconsequential value to the estate without further notice." But the provision does not mention an interested party's right to object to abandonment and obtain a hearing. Rather, the provision indicates only that an interested party can seek notice of a proposed abandonment.

Cook is correct that the advisory committee notes to Rule 6007(a) state that "[t]he burden, expense and inefficiency [of sending the § 554(a) notice to numerous interested parties] can be alleviated in large measure by incorporating th[at] notice

into or together with the [§ 341] notice of the meeting of creditors so that separate notices would not be required." Fed. R. Bankr. P. 6007 advisory committee's note. But the § 341 notice in this case did not adequately incorporate a § 554(a) notice. Specifically, the right to object to abandonment and seek a hearing are the crucial elements of § 554(a) and Rule 6007, and those rights are not referenced in the § 341 notice. Additionally, § 554(a) contemplates that the trustee will provide notice, not the court clerk, as was the case here.

"The requirements [of § 554(a)] are exacting, in recognition of the potential harm to creditors from the trustee's abandoning property to which they would otherwise be entitled because it is property of the estate in bankruptcy, and of the fact that abandonment is revocable only in very limited circumstances, such as where the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset." Morlan, 298 F.3d at 618 (quotations omitted); see also In re Shelby, 232 B.R. 746, 751 (Bankr. W.D. Mo. 1999) (concluding that trustee did not comply with § 554(a) by stating in multiple reports filed with the court that he had abandoned estate property); In re Cheatle, 150 B.R. 266, 268-69 (Bankr. D. Colo. 1993) (determining "that the Trustee's reliance on the Section 341 notice and his alleged oral abandonment at the 341 meeting does not satisfy the requirements of the Code and Rule on abandonment").

We conclude that because there was no compliance with § 554(a) and Rule 6007, the trustee did not abandon any alleged claims for stay violations to Cook.

See Auday v. Wet Seal Retail, Inc., 698 F.3d 902, 904 (6th Cir. 2012) (holding that chapter 7 debtor lacked standing to pursue age discrimination claim, which was property of the estate and had not been abandoned by the trustee).

Finally, Cook contends that 11 U.S.C. § 362(k) confers standing. He is mistaken. This provision merely provides a private cause of action for "any willful violation of a stay." § 362(k)(1). Cook must still identify a proper basis for his standing to seek sanctions in the chapter 7 case for alleged stay violations. See Pettitt v. Baker, 876 F.2d 456, 458 (5th Cir. 1989) (holding that § 362(k)'s predecessor (11 U.S.C. § 362(h)) "creates a private right of action," but "express[ing] no opinion regarding whether . . . [the debtor and his attorney] ha[d] the requisite standing"). As the bankruptcy court and the BAP noted, Cook appears to be claiming that the alleged stay violations impaired causes of action against Wells Fargo and the Garretts that either belonged to or were acquired from HCAN post-petition.[6] But the automatic stay does not apply to non-debtors or actions by the debtor. See 2 Norton Bankruptcy Law & Practice § 43:4 & n.16 (3d ed. 2011). Accordingly, Cook suffered no injury to a legally protected interest due to the alleged stay violations.

---

[6] In his opening brief before the BAP, Cook asserted standing based on his post-petition acquisition of HCAN's causes of action. And in his motion for reconsideration of the bankruptcy court's decision, Cook asserted that HCAN's causes of action were not transferred to him. On appeal before this court, it is unclear whether Cook is attempting now to change his claim to be that he acquired causes of action, pre-petition, from all of the corporate entities. In any event, Cook cannot now advance a new argument. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992) (noting the general rule that "a federal appellate court does not consider an issue not passed upon below" (quotation omitted)).

-11-

Because Cook lacked standing to pursue alleged violations of the automatic stay, the bankruptcy court properly denied his motions for sanctions and motion for reconsideration.[7]

### III

Cook also claims that a number of due-process violations were committed in the bankruptcy court and this court that impeded his ability to demonstrate standing. He argues, for the first time on appeal, that the bankruptcy court failed to provide reasonable notice and an opportunity for a hearing. But "[a]n issue is waived if not presented to the BAP, unless exceptional circumstances exist to justify consideration of the issue." Burnett v. Resurgent Capital Servs. (In re Burnett), 435 F.3d 971, 976-77 (9th Cir. 2006); see also Walker, 959 F.2d at 896 (observing the general rule "that a federal appellate court does not consider an issue not passed upon below" (quotation omitted)). We conclude that no such exceptional circumstances are present.

Cook also argues that his due process rights were violated in this court because he was denied the opportunity to supplement the record and that Fed. R. App. P.

---

[7] The BAP rejected Cook's additional argument that he has standing because the alleged stay violations affected intellectual property he claimed as exempt from the bankruptcy estate. But Cook devotes no argument to that issue before this court. The issue is therefore waived. See Gen. Elec. Capital Corp. v. Manager of Revenue & Exofficio Treasurer for the City & Cnty. of Denver (In re Western Pac. Airlines, Inc.), 273 F.3d 1288, 1293 (10th Cir. 2001).

Because we determine that Cook lacks standing, we do not address the other grounds cited by the bankruptcy court in denying the sanctions motions.

6(b)(1)(A) (rendering certain rules of appellate procedure inapplicable in appeals from BAP orders) facilitated that violation. We disagree. When Cook moved to supplement the record to include a 2007 indemnity agreement, this court denied the motion as premature because the record had not yet been transmitted to this court. Cook was specifically instructed that he could renew the motion if the agreement was not included in the transmitted record and the agreement was part of the record below. But he did not again seek supplementation. Instead, after the record was transmitted, Cook filed a motion stating that many items were omitted or misstated in the record, and he requested that the orders of the bankruptcy court and the BAP be vacated and that the case be remanded, with an order to the bankruptcy court to show cause why Cook's sanctions motions should not be granted. This court denied the motion because Cook was attempting to bypass the briefing process.

Cook has not been denied due process. He did not seek supplementation after the record was transmitted despite the opportunity to do so. And Cook admits that the indemnity agreements are "not the focus of [the] alleged [stay] violations." Moreover, the agreements were apparently part of a settlement agreement that was never finalized or approved by the bankruptcy court. Cook has not shown that the agreements have any relevance to the issues on appeal. Nor does he discuss how Rule 6(b)(1)(A) is unconstitutional, and we will not craft a party's arguments for him. See Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991).

Finally, Cook has filed a "Notice in Accord with Fed. R. App. P. Rule 12.1," indicating that he filed a motion in his closed bankruptcy case challenging the assessment of administrative fees and requesting substantive relief from other bankruptcy court and BAP orders. Rule 12.1 requires that "[i]f a timely motion is made in the district court for relief that it lacks authority to grant because of an appeal that has been docketed and is pending, the movant must promptly notify the circuit clerk if the district court states either that it would grant the motion or that the motion raises a substantial issue." Fed. R. App. P. 12.1(a). Then, "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. P. 12.1(b).

We conclude that no action is necessary on Cook's notice and deny it. First, Rule 12.1 pertains to motions filed in the district court. Id. Regardless, the bankruptcy court denied Cook's motion, noting that it lacks jurisdiction to address such matters on appeal. Consequently, there is no reason for this court to consider a remand or otherwise defer issuing a decision.

**IV**

The judgment of the Bankruptcy Appellate Panel is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-14-