**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAULA WANKIER,

      Plaintiff-Appellee,

v.

CROWN EQUIPMENT
CORPORATION,

      Defendant-Appellant.

No. 02-4147

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:00-CV-454-K)**

---

Michael L. O'Donnell (Darcy M. Goddard, Wheeler Trigg & Kennedy, P.C.,
Denver, Colorado and Lee Mickus, Snell & Wilmer, LLP, Denver Colorado, with
him on the brief), Wheeler Trigg & Kennedy, P.C., Denver, Colorado, for
Defendant-Appellant.

Michael P. Zaccheo (Christian S. Collins with him on the brief), Richards Brandt
Miller & Nelson, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **HENRY,** and **McCONNELL**, Circuit Judges,

---

**McCONNELL**, Circuit Judge.

---

Crown Equipment Corporation ("Crown") appeals a jury verdict for Plaintiff Paula Wankier in this products liability action, which is governed by Utah law. Ms. Wankier was the operator of an electric pallet jack, also known as a "walkie-rider," manufactured by Crown. While operating the walkie-rider in a warehouse, Ms. Wankier drove the machine into a conveyor belt. Her leg was caught between the conveyor and the walkie-rider, causing severe and permanent injuries to her leg. Ms. Wankier brought suit against Crown in federal district court in the District of Utah, pursuant to diversity jurisdiction.

Ms. Wankier claimed that the accident occurred because the walkie-rider contained a latent defect: that when the control arm, which is used to regulate the power and direction of the machine, is slipped from the "power on" position to a neutral zone between the "power on" and the brake application position, the machine's power cuts out, the machine coasts, and the operator loses control over it. Crown concedes this fact regarding the machine's operational capabilities. Crown Br. at 3. Ms. Wankier asserted strict liability claims for design defect and inadequate warnings, as well as negligence claims related to product design and inadequate warnings. Her case at base rested on the contention that Crown should have eliminated or changed the location of the neutral – or coast – position of the control arm, and also that Crown should have equipped the walkie-rider with a guard rail attached to the back of the machine's operator platform.

The district court granted partial summary judgment in favor of Crown on the inadequate warning claims. App. 531. After a six-day trial, the jury found in favor of Crown on Ms. Wankier's negligent design claim, but found for Ms. Wankier on the strict liability design defect claim. The jury awarded special damages in the amount of $210,000 and general damages in the amount of $90,000. The district court reduced the overall award to $240,000 to reflect the jury's finding that Ms. Wankier was 20% at fault for the accident. It also awarded costs and interest.

Prior to trial, Crown submitted two proposed jury instructions, both of which informed the jury that the plaintiff bore the burden of showing the existence of a safer, feasible, alternative design.[1] Crown contended that this

---

[1] First, Crown proposed the following instruction on the elements of a strict liability design defect claim:

> In order to establish her claim for strict liability in tort, Plaintiff Paula Wankier has the burden of proving each of the following four elements by a preponderance of the evidence:
> First, that the Defendant Crown Equipment manufactured a product which, at the time it was sold, was in a defective condition that made the product unreasonably dangerous to the user; and
> Second, that the product reached the ultimate user without substantial change in the condition in which Defendant Crown Equipment sold it; and
> Third, that any defective condition in the product proximately caused the injury to the Plaintiff Paula Wankier; and
> Fourth, at the time the Defendant Crown Equipment sold the product, a safer alternative design was available and practicable under the circumstances.

(continued...)

instruction was required under controlling Tenth Circuit precedent, *Allen v. Minnstar, Inc.*, 8 F.3d 1470 (10th Cir. 1993).  Ms. Wankier argued that, in light of subsequent decisions by the Utah Supreme Court, there was no requirement under Utah strict products liability law that the plaintiff show the existence of a safer alternative design.  The district court declined to give Crown's proposed jury instructions:

> The court declines to give proposed instructions 16 and 16-A from defendant for the reasons that I have previously explained.  I do not believe that Utah law – and if I'm wrong, I'm sure if you lose you'll go up and see what the Circuit says about it.  I'll give my proposed instruction 20.  I am not convinced that Utah law requires, as an element of plaintiff's case, a safer alternative design.

App. 1613-14.[2]  Noting the fact that the Utah Supreme Court had not had the

_____

[1](...continued)
Def.'s Requested Jury Instruction No. 16, App. 672.
    In the alternative, Crown requested this instruction:
        To prove the existence of a design defect with respect to
Crown's Walkie-Rider, Plaintiff Paula Wankier must show, by a
preponderance of the evidence, that a safer, technically feasible,
alternative design that was practicable in terms of cost was available
to Crown at the time the Walkie-Rider was sold.
Def.'s Requested Jury Instruction No. 16A, App. 673.

[2]Instruction No. 20, the district court's instruction covering the elements of
strict liability, reads:
    I will now instruct you as to the law of strict products liability.  A
    manufacturer of a product is liable for damages resulting from
    physical harm to the ultimate user or consumer when:
    1.    At the time the product was sold by the manufacturer, there
    was a defect or defective condition in the product, which made the
    product unreasonably dangerous for its anticipated or reasonably
                                                            (continued...)

-4-

opportunity to rule on the law applicable to a strict liability design defect claim,

the district court noted:

> And this tea leaf reading thing on what the Utah Supreme Court will
> or will not do is a very interesting question. But they did sort of
> survey the waterfront in *House*[ *v. Armour of Am., Inc.*, 929 P.2d 340
> (Utah 1996)]. Now, why they didn't refer to, what is it, *Allen*, I
> don't know. But it looks to me like as they surveyed the waterfront,
> what they really found was that plaintiff's burden is that the subject
> product failed to perform as safely as an ordinary consumer or user
> would expect when used in an intended or reasonably foreseeable
> manner, which is language from that *House v. Armour* [opinion] on
> Page 344. And if you look at the Model Utah Jury Instruction 12.4,
> definition of defective design, that's my best reading of the Utah tea
> leaf.

Mot. Hr'g Tr. 59-60, App. 877-78 (italics added).

The principal issue on appeal is whether the district court erred, as a matter

of Utah law, in declining to instruct the jury that a plaintiff alleging design defect

---

[2](...continued)
foreseeable use; and
2.      The manufacturer, wholesaler, retailer or distributor is
engaged in the business of selling the product; and
3.      Plaintiff's injuries and damages are proximately caused by
the defective condition.
A manufacturer of a defective and unreasonably dangerous product is
liable for injury and damage to the ultimate user or consumer under
the above circumstances even though:
1.      The product manufacturer or seller who placed the product in
the stream of commerce has exercised reasonable, or the utmost, care
in design of the product; and
2.      The user or consumer has not bought the product from or
entered into contractual relation with the product manufacturer or
seller.
Jury Instruction No. 20, App. 783.

in a strict liability action must prove the existence of a safer alternative design, practicable under the circumstances and available at the time defendant placed the product in the stream of commerce. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## Analysis

In cases arising under a federal court's diversity jurisdiction, the task of the federal court is not to reach its own judgment regarding the substance of the common law, but simply to "ascertain and apply the state law." *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944); *see also Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). The federal court must defer to the most recent decisions of the state's highest court. *Blackhawk-Central City Sanitation Dist. v. Am. Guar.*, 214 F.3d 1183, 1194 n.4 (10th Cir. 2000). Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue. *Id.*; *see Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir. 2000).

The Utah Supreme Court adopted the doctrine of strict products liability, as

defined in Section 402A of the *Restatement (Second) of Torts*, in *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1979). But it has not addressed whether the plaintiff bears the burden of showing a safer alternative design in a strict liability design defect case. In *Allen*, this Court examined the then-current state of Utah products liability tort law, and concluded the plaintiff, in a design defect case, "bear[s] the burden of showing that an alternative, safer design, practicable under the circumstances, was available at the time the [products] were sold." 8 F.3d at 1479; *see also Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1279 (10th Cir. 2003) (noting holding of *Allen* regarding standards for strict liability design defect claims under Utah law).[3]

Ms. Wankier argues that the Utah cases subsequent to *Allen* demonstrate that a Utah court would not require plaintiffs to prove an element of a safer, feasible alternative design as an element of a strict liability design defect claim. These cases stand for the following proposition:

> To plead a case of strict products liability against a manufacturer, a plaintiff must allege (1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries.

*Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 929 (Utah 1993); *see also*

---

[3] We note that the authors of the *Restatement (Third) of Torts* have adopted this requirement of proof of a safer alternative design. *See Restatement (Third) of Torts*, Prod. Liab. § 2(b) (1998).

*House v. Armour of Am., Inc.*, 929 P.2d 340, 343, 344 (Utah 1996) (applying *Restatement (Second) of Torts* § 402A standard for strict liability and quoting comment i, regarding the doctrine of open and obvious danger); *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah App. 1994). None of these cases are apposite because none involve design defect issues. Nor do any of the cases discuss or cite *Allen*. *See House*, 929 P.2d at 342 (duty to warn claim); *Lamb*, 869 P.2d at 929 (manufacturing defect claims); *Burns*, 876 P.2d at 416-17 (manufacturing defect claim). The very recent case of *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 928 (Utah 2003), similarly recites the elements noted above, but like the earlier decisions does not reach the issue before us. The *Schaerrer* court concluded that the defendant in that case, a pharmacist mixing "fen-phen" capsules, was shielded by the "learned intermediary rule." *See id.*

These distinctions are consequential. In neither duty-to-warn claims nor manufacturing defect claims does the issue of a safer alternative design logically arise. A manufacturer or distributor may have a duty to warn of latent dangers even if there is no feasible way to produce a safer product; the purpose of the warning is to enable the user to take appropriate steps to avoid the hazard. Similarly, a manufacturing defect claim, by its nature, involves a deviation from the product's design specifications, to the injury or potential injury of a user. The

-8-

gravamen of the tort is not defective design but defective execution of the design. In a case involving an allegedly defective design, however, the existence of a safer feasible design may be thought relevant to determining whether the design is defective or whether the product is simply unavoidably dangerous. *See Grundberg v. Upjohn Co.*, 813 P.2d 89, 92 (Utah 1991) (distinguishing between design defect claims and manufacturing defect and inadequate warning claims for purposes of the exemption from strict liability for unavoidably unsafe products, as discussed in the *Restatement (Second) of Torts*, section 402A, comment k).

In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen*, as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." *Koch*, 203 F.3d at 1231.

Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed "if the jury might have based its verdict on the erroneously given instruction." *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002) (quoting *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1202 (10th Cir.1997). Under our precedents, reversal is necessary "[e]ven if that possibility

is 'very unlikely[.]'" *City of Wichita v. United States Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996) (quoting *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 780 (10th Cir. 1989)).

A district court's failure to inform the jury of all the elements essential to a plaintiff's claim necessarily misleads the jury. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1508 (10th Cir. 1997) ("the court's definition of the prima facie case was erroneous . . . . Accordingly, we reverse the jury verdict . . . ."); *see also Powers v. MJB Acquisition Corp.*, 184 F.3d 1447, 1152-53 (10th Cir. 1999) (district court's refusal to instruct on element essential for an award of damages constituted reversible error). In this case, there is no doubt that the erroneous instruction regarding Plaintiff's burden to show a safer alternative design may have misled the jury. Plaintiff's counsel even relied on this missing element in closing argument: "It doesn't say anywhere in these instructions that plaintiff has to solve the problem . . . . [I]t's not required. We don't have to prove that there's a better alternative." Tr. 989, App.1751.

Crown also challenges the district court's decision to permit Ms. Wankier's expert, Fred Smith, to testify. Among other complaints, Crown contends that Smith was not qualified to testify regarding the existence of a safer alternative design. Because the district court's ruling on this issue may have been affected by the court's ruling that Plaintiff did not need to establish the existence of a

safer alternative design, on remand it will be necessary for the district court to revisit this issue.

## Conclusion

For the foregoing reasons, the verdict of the jury regarding Ms. Wankier's strict liability design defect claim against Crown is REVERSED, the judgment of the district court on that claim is VACATED, and the case is REMANDED to the district court for proceedings consistent with this opinion.