**PUBLISH**

FILED
United States Court of Appeals
Tenth Circuit

May 7, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ADVANCED RECOVERY
SYSTEMS, a Utah limited liability
company,

      Plaintiff Counterclaim
      Defendant,

v.

AMERICAN AGENCIES, a
Pennsylvania limited liability
company,

      Defendant Counterclaimant
      Third-Party Plaintiff -
      Appellee,

NRA GROUP, a Pennsylvania
limited liability company, a/k/a
National Recovery Agency;
STEVEN C. KUSIC, CEO/managing
member of American Agencies, LLC
and/or NRA Group, LLC, and
individually,

      Defendants,

BRENT SLOAN,

      Third-Party Defendant -
      Appellant,

KINUM, INC.; SCOTT MITCHELL;
BLAKE REYNOLDS,

      Third-Party Defendants,

No. 17-4202

and

SAJAX SOFTWARE,

       Third-Party Defendant
       Counterclaimant.

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:13-CV-00283-DAK-BCW)**

_____

Richard D. Salgado, Dentons US LLP, Dallas, Texas (Kelley C. Cox, Dentons US, Dallas, Texas, and Wade P. K. Carr, Dentons US, Kansas City, Missouri, with him on the briefs), for Third-Party Defendant-Appellant.

Michael K. Erickson (Carol A. Funk, with him on the brief), Ray Quinney & Nebeker P.C., Salt Lake City, Utah, for Third-Party Plaintiff-Appellee.

_____

Before **BACHARACH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of Mr. Brent Sloan's participation in two transactions. The first transaction entailed a merger between Advanced Recovery Systems, LLC and Kinum, Inc.;[1] the second transaction consisted of a sale of software from Kinum to Sajax Software, LLC.

---

[1] At the time of the merger, Kinum was known as "Fidelis Asset Management, Inc." In the interest of simplicity, however, we refer to the entity (before and after the merger) as "Kinum."

2

American Agencies, LLC alleged harm from these transactions and sued Mr. Sloan for damages and restitution.[2] After the close of evidence, Mr. Sloan filed a motion for judgment as a matter of law. Following the denial of this motion, a jury found Mr. Sloan liable on American Agencies' claims of tortious interference with business relations, conspiracy to interfere with business relations, tortious interference with contract, copyright infringement, unjust enrichment, and misappropriation of trade secrets.[3] Mr. Sloan unsuccessfully renewed his motion for judgment as a matter of law. After the district court denied this motion, Mr. Sloan appealed. We affirm in part and reverse in part based on four conclusions:

1.      On the claims of tortious interference with business relations and conspiracy to interfere with business relations, Mr. Sloan contends that (1) one of American Agencies' theories of improper means is preempted by a Utah statute and (2) American Agencies did not present sufficient evidence of improper means. We disagree because Mr. Sloan did not preserve his preemption argument and the jury could have reasonably found improper means based on deceit. We thus conclude that the district court properly denied Mr. Sloan's motion for judgment as a matter of law on these claims.

2.      On the claim of tortious interference with contract, Mr. Sloan argues that the jury instructions erroneously and prejudicially

---

[2]     Federal jurisdiction existed under 28 U.S.C. §§ 1331(a)(1), 1332, and 1367(a).

[3]     The finding of liability for misappropriation of trade secrets is not involved in this appeal.

3

excluded improper means as an element. We agree with Mr. Sloan and reverse the judgment on this claim.[4]

3.  On the claim of copyright infringement, Mr. Sloan contends that the jury could not have reasonably found commercial use or regarded the pertinent documents as original. We disagree, concluding that (1) Mr. Sloan did not preserve his commercial-use argument and (2) American Agencies' evidence on originality was sufficient.

4.  On the claim of unjust enrichment, Mr. Sloan contends that the jury could not have reasonably inferred the value of a benefit to Mr. Sloan.[5] We agree, so we reverse the denial of Mr. Sloan's motion for judgment as a matter of law on this claim.

## Background

**1.  Advanced Recovery Systems enters into a licensing agreement with American Agencies.**

American Agencies is a debt-collection agency that entered into a licensing agreement with Advanced Recovery Systems. Under the licensing agreement, American Agencies enjoyed

- the exclusive right to use certain debt-collection software developed by Advanced Recovery Systems and

- the right of first refusal with respect to any future sale of Advanced Recovery Systems.

---

[4]  On appeal, Mr. Sloan also challenges the district court's award of attorney's fees to American Agencies. This part of the award was based on the claim of tortious interference with contract. Our reversal on this claim encompasses the award of attorney's fees.

[5]  Mr. Sloan also contends that other legal remedies were adequate to compensate American Agencies. We need not address this contention.

The debt-collection software contained American Agencies' customer data, including a client list, client history, fee structure, and rate of success.

**2. Advanced Recovery Systems merges into Kinum, and Kinum sells the software to Sajax.**

Without American Agencies' knowledge, Advanced Recovery Systems merged into Kinum. *See* p. 3 n.1, above. Mr. Sloan helped to facilitate the merger and became Kinum's chief executive officer after the merger. As the chief executive officer, Mr. Sloan oversaw Kinum's sale of the debt-collection software to Sajax. With the software came American Agencies' customer data.

# The Underlying Transactions



**The Individual Claims and Mr. Sloan's Appellate Arguments**

**1.  Liability for tortious interference with business relations and conspiracy to interfere with business relations: The evidence adequately supported the jury's findings of liability.**

On the claims of tortious interference with business relations and conspiracy to commit this tort, American Agencies had to prove improper means. *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 864 (Utah 2008); *see also Puttuck v. Gendron*, 199 P.3d 971, 978 (Utah App. 2008) (stating that a claim of civil conspiracy under Utah law requires an underlying tort).[6] American Agencies alleged that Mr. Sloan had used improper means in two ways:

1. using deceit to conceal transfers of the debt-collection software and American Agencies' customer data

2. initiating unfounded litigation against American Agencies.[7]

Mr. Sloan responds to these allegations by arguing that

- the theory of improper means through deceit is preempted by a Utah statute and

- the evidence did not indicate that the litigation had been unfounded.

We reject these arguments.

---

[6]    The district court and the parties treat Utah law as the applicable law, so we also apply Utah law. *See Strickland Tower Maint., Inc. v. AT&T Commc'ns, Inc.*, 128 F.3d 1422, 1426 (10th Cir. 1997).

[7]    The parties agree that a third theory presented by American Agencies (altering American Agencies' license agreements with sales agents) did not apply to Mr. Sloan.

### A.   Mr. Sloan did not preserve his preemption argument.

On appeal, Mr. Sloan urges preemption of American Agencies' theory of deceit based on a Utah statute. But Mr. Sloan failed to preserve his preemption argument.

To preserve the argument, Mr. Sloan needed to comply with Rule 50 of the Federal Rules of Civil Procedure, which governs motions for judgment as a matter of law. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006). Under subsection (a) of this rule, a litigant can move for judgment before the jury renders its verdict. Fed. R. Civ. P. 50(a). If a litigant moves for a pre-verdict judgment under subsection (a) and the court denies the motion, the litigant can renew the motion after the verdict under subsection (b) of the rule. Fed. R. Civ. P. 50(b); *see Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738–39 (10th Cir. 2007). If a ground is omitted from a pre-verdict motion, however, the ground cannot be asserted in a post-verdict motion or in an appeal. *See Marshall*, 474 F.3d at 738–39 (cannot be asserted in the post-verdict motion); *Unitherm Food Sys., Inc.*, 546 U.S. at 399 (cannot be asserted in the appeal).

Before the jury returned a verdict, Mr. Sloan moved for judgment as a matter of law under Rule 50(a), contending that American Agencies hadn't presented evidence of (1) intentional interference by improper means or (2) injury caused by the interference. But Mr. Sloan's motion did

8

not include his current argument involving preemption. As a result, this argument was not preserved for appeal.

**B.** **Mr. Sloan doesn't contest the sufficiency of the evidence on deceit, so we reject his challenge to the claims of tortious interference with business relations and conspiracy to commit this tort.**

On appeal, Mr. Sloan does not challenge the sufficiency of the evidence supporting American Agencies' theory of deceit; he challenges only the sufficiency of the evidence supporting the theory of unfounded litigation. Given the limited scope of this challenge, we treat the deceit theory as sufficient for liability.[8]

The district court's special-verdict form didn't distinguish between American Agencies' two theories of improper means, so we don't know

---

[8]     Even if Mr. Sloan had challenged the sufficiency of the evidence on deceit, we would have rejected the challenge. In our view, the trial evidence permitted a reasonable jury to find that Mr. Sloan had deceitfully concealed transfers involving the software and American Agencies' customer data. *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 914 (10th Cir. 2004) (sufficient evidence exists if there is evidence on which a jury could properly return a verdict for the non-movant). This evidence included support for three findings:

First, Mr. Sloan knew before the merger with Kinum that American Agencies had an exclusive license to use the software and a right of first refusal on a sale of Advanced Recovery Systems.

Second, with knowledge of these rights, Mr. Sloan helped to merge Advanced Recovery Systems into Kinum without telling American Agencies of the merger or the transfer of software to Kinum.

9

which theory the jury credited. Given this uncertainty, we must affirm if sufficient evidence existed on either of American Agencies' factual theories. *Kirkbride v. Terex USA, LLC*, 798 F.3d 1343, 1349 (10th Cir. 2015). So in the absence of a challenge to the sufficiency of the evidence on deceit, we need not decide whether the evidence would have supported American Agencies' theory of unfounded litigation.

Mr. Sloan points to a line of cases suggesting that "reversal is . . . necessary if *either* basis [for a verdict] was improper." Appellant's Reply Br. at 18 (emphasis in original); *see id.* at 18–19. But this line of cases applies only when the defendant challenges the validity of a legal theory. *Pratt v. Petelin*, 733 F.3d 1006, 1009 (10th Cir. 2013). These cases do not apply when the defendant challenges the sufficiency of the evidence on some (but not all) of the plaintiff's factual theories:

> [T]hese cases address the situation where the jury may have based its verdict on an incorrect or entirely unsupported *legal* theory. They are thus distinguishable from the case at hand, where [the defendant] claims that some, but not all, of the *factual* bases presented to the jury for one legal theory—negligence—were unsupported by sufficient evidence.

---

Third, without telling American Agencies, Mr. Sloan directed Kinum to sell the software to Sajax even though the software contained American Agencies' customer data.

*Id.* (emphasis in original). Here we are addressing the sufficiency of evidence on *factual* theories, not the validity of a *legal* theory. Mr. Sloan's cited authority is thus inapplicable.

**2.     Liability for tortious interference with contract: The district court erroneously and prejudicially failed to include improper means as an element of the claim.**

American Agencies claimed tortious interference with contract, alleging that Mr. Sloan had induced Advanced Recovery Systems to breach its licensing agreement. The district court instructed the jury on the elements of the claim but did not include improper means as an element. The omission constituted an error that prejudiced Mr. Sloan.

We apply the abuse-of-discretion standard. *Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012). But in applying this standard, we conduct de novo review of the instructions as a whole to assess their accuracy under Utah law. *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1179 (10th Cir. 2005).

Reviewing the instructions de novo, we conclude that the district court erred because the Utah Supreme Court treats improper means as an element of tortious interference with contract. *See C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 39 (Feb. 27, 2019) ("Because the weight of authority supports *St. Benedict*'s adoption of the 'improper means' element for the tort of intentional interference with contract, and because this element has become firmly embedded in Utah law, we reaffirm it."); *see*

11

*also St. Benedict's Devel. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (stating that one incurs liability for intentional interference with contract by "intentionally and improperly" causing a party not to perform the contract). By failing to correctly tell the jury what's needed for liability, the district court misled the jury. *See Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 868 (10th Cir. 2003) ("A district court's failure to inform the jury of all the elements essential to a plaintiff's claim necessarily misleads the jury.").

American Agencies argues that the error didn't prejudice Mr. Sloan. We disagree. An error in jury instructions requires reversal if the error was prejudicial. *Heggy v. Heggy*, 944 F.2d 1537, 1542 (10th Cir. 1991). An error is prejudicial if "the jury *might have* based its verdict on the erroneously given instruction." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1158 (10th Cir. 2008) (emphasis in original) (quoting *Wankier*, 353 F.3d at 867). We thus must reverse based on an erroneous instruction if there is even a slight possibility of an effect on the verdict. *Id.*

Such a possibility doesn't always exist. For example, omission of an element may be harmless if the verdict on another claim would have required the jury to find the omitted element. *See United States v. McDonald*, 150 F.3d 1301, 1304–05 (10th Cir. 1998) (concluding that the omission of elements of a criminal offense in the jury instructions was

12

harmless because the verdict of guilty on a separate criminal offense "necessarily embraced the missing elements").

American Agencies contends that the jury necessarily found that Mr. Sloan had used improper means to interfere with American Agencies' licensing agreement with Advanced Recovery Systems because

- the jury instructions included improper means as an element of tortious interference with business relations and

- the jury found tortious interference with American Agencies' business relations.

This contention assumes that American Agencies' theories of improper means for tortious interference with business relations would also support liability for tortious interference with contract.[9] If even one theory of improper means supported liability for tortious interference with business relations but not for tortious interference with contract, the instructional error would be prejudicial. *See* p. 12, above.

As noted above, American Agencies presented two theories of improper means on the claim against Mr. Sloan for tortious interference with business relations:

1. the use of deceit to conceal the transfers of the debt-collection software and American Agencies' customer data

---

[9]  American Agencies assumes that Utah uses the same definition of improper means for both tortious interference with contract and tortious interference with business relations. For the sake of argument, we can make the same assumption.

2. the initiation of unfounded litigation against American Agencies.

American Agencies based the deceit theory on two transactions:

1. Advanced Recovery Systems' merger with Kinum

2. Kinum's sale of the debt-collection software to Sajax.

The jury might have found liability for tortious interference with business relations based on Kinum's sale of the debt-collection software. For tortious interference with contract, however, the jury might have rejected liability on this basis by viewing Mr. Sloan as the principal of one of the contracting parties (Kinum).

Under Utah law, a corporation cannot incur liability for interfering with its own contract. *See Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982) ("[O]ne party to a contract cannot be liable for the tort of interference with contract for inducing a breach by himself or the other contracting party."), *overruled on other grounds by Eldridge v. Johndrow*, 345 P.3d 553 (Utah 2015). And after Advanced Recovery Systems merged with Kinum, Kinum became a party to the licensing agreement. *See* Utah Stat. § 48-3a-1026(1)(d) (explaining that when a limited liability company merges with another entity, "all debts, obligations, and other liabilities" of the limited liability company become "debts, obligations, and other liabilities of the surviving entity"). So when

14

Kinum sold the debt-collection software, it was a party to the licensing agreement and Mr. Sloan was Kinum's chief executive officer.

To find that Mr. Sloan's participation in this sale constituted improper means for tortious interference with contract, the jury would have needed to find that Kinum's chief executive officer had tortiously interfered with his own company's contract. As noted above, Utah law doesn't authorize liability for tortiously interfering with one's own contract. And under Utah law, corporations can act only through their agents. *Stratton v. W. States Constr.*, 440 P.2d 117, 118 (Utah 1968).

In similar circumstances, courts throughout the country have held that a corporate officer cannot incur liability for tortiously interfering with the corporation's own contract.[10] Here, however, we need not decide

10      *See Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2d Cir. 1995) (noting that Connecticut courts have held that "[a]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its contract" (quoting *Murray v. Bridgeport Hosp.*, 480 A.2d 610, 613 (Conn. Super. Ct. 1984))); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001) (stating that under New Jersey law, a corporate agent acting within the scope of the agency relationship cannot incur liability for tortiously interfering with the corporation's own contract with a third party); *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 630–31 (6th Cir. 2013) ("[W]ell-established Michigan law holds that 'corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation.'" (quoting *Reed v. Mich. Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. App. 1993))); *Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d

15

whether Utah law would always bar liability for a corporate agent's interference with the corporation's own contract. Even if Utah law would not go that far, the jury could reasonably have determined that Mr. Sloan, as Kinum's chief executive officer, had not acted as a stranger to Kinum's contract with a third party. Such a determination would have allowed a finding that Mr. Sloan had not used improper means to tortiously interfere with American Agencies' contract (even if he had used improper means to tortiously interfere with American Agencies' business relations). The district court's error thus could have affected the verdict, which requires us to treat the error as prejudicial and to reverse the judgment on this claim. *See* p. 12, above.

---

784, 791 (Ark. 2001) ("It is well settled that a party to a contract, and its agents acting in the scope of their authority, cannot be liable for interfering with the party's own contract."); *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006) (holding that when officers act in their official capacity as corporate agents, they cannot incur personal liability for tortiously interfering with the corporation's own contracts); *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla. 1996) (holding that a person "acting in a representative capacity for a party" to a contract cannot incur liability for wrongfully interfering with that contract); *Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997) ("[A] contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract."); *see also* W. Page Keeton et al., Prosser & Keeton on The Law of Torts 990 (5th ed. 1984) ("[T]he defendant's employees acting within the scope of their employment are identified with the defendant himself so that they may ordinarily advise the defendant to breach his own contract without themselves incurring liability in tort.").

**3.    Liability for copyright infringement: The district court did not err in denying Mr. Sloan's argument for judgment as a matter of law.**

The debt-collection software contained American Agencies' standard collection letter and service agreement. After obtaining the software, Kinum began using a collection letter and a service agreement like the ones used by American Agencies. Kinum's use of these documents led American Agencies to include a claim for copyright infringement against Mr. Sloan.

Mr. Sloan contends that on the copyright-infringement claim, the evidence was insufficient regarding commercial use or originality. We reject these contentions, concluding that (1) Mr. Sloan failed to preserve his challenge involving commercial use and (2) the evidence on originality was sufficient for a jury to find liability.

To preserve the challenge on commercial use, Mr. Sloan needed to raise this issue in his pre-verdict motion for judgment as a matter of law. *See* p. 8, above. In that motion, Mr. Sloan did not question the sufficiency of evidence involving commercial use. By omitting this challenge from the pre-verdict motion, Mr. Sloan failed to preserve the issue for appeal. *See* p. 8, above.

On appeal, however, Mr. Sloan also challenges the evidence of originality. To consider this challenge, we review the issue de novo and affirm if there is evidence on which the jury could properly return a verdict

17

for American Agencies. *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 914 (10th Cir. 2004).

To establish Mr. Sloan's liability on the claim of copyright infringement, American Agencies had to prove the originality of its collection letter and service agreement. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). These documents would be considered "original" only if

- American Agencies independently created the work and

- the work entailed "some minimal degree of creativity."

*Id.*

Mr. Sloan contends that American Agencies' collection letter and service agreement lacked a minimal degree of creativity. But the required creativity "is extremely low," and most works satisfy this requirement even when they are "'crude, humble or obvious.'" *Id.* (quoting 1 Melville B. Nimmer & David Nimmer, Copyright § 1.08[C][1] (1990)).

Given this low standard, the jury could have reasonably inferred that the collection letter and service agreement had entailed the required degree of creativity. An executive for American Agencies testified that (1) she had contributed to the format and content of the collection letter and (2) the service agreement contained terms unique to American Agencies, including

- references to American Agencies' services to creditors,

18

- information in the "payment authorization" section,

- information about a "phase one guarantee,"

- language allowing a client to authorize American Agencies to review accounts for referral to an attorney for legal action, and

- language allowing clients to authorize American Agencies to offer settlements.

Given this testimony, the jury could reasonably find at least some creativity, rendering the evidence of originality sufficient for liability.

**4.    Liability for unjust enrichment: The district court should have granted judgment as a matter of law to Mr. Sloan based on the insufficiency of evidence regarding the value of his benefit.**

Mr. Sloan contends that the district court should have granted him judgment as a matter of law on American Agencies' claim of unjust enrichment because insufficient evidence existed on the value of Mr. Sloan's benefit. We agree.

On the claim of unjust enrichment, American Agencies had to prove the amount of Mr. Sloan's benefit stemming from his wrongful conduct. *See Emergency Physicians Integrated Care v. Salt Lake Cty.*, 167 P.3d 1080, 1086 (Utah 2007) ("The first element of [unjust enrichment] requires the court to measure the benefit conferred on the defendant by the plaintiff."); *Richards v. Brown*, 222 P.3d 69, 81 (Utah Ct. App. 2009) (requiring the plaintiff to prove that a wrongdoer "has been unjustly

19

enriched in some calculable amount"), *aff'd on other grounds*, 274 P.3d 911 (Utah 2012).

At trial, American Agencies relied on expert testimony to prove the value of the benefit received by Mr. Sloan's corporation (Kinum) rather than the value of the benefit received by Mr. Sloan. American Agencies argues that as a stockholder, Mr. Sloan benefited from an increase in the value of his Kinum stock. But American Agencies didn't present evidence on the amount of the alleged increase in the stock price. Given the absence of such evidence, American Agencies' claim of unjust enrichment failed as a matter of law. The district court should thus have granted Mr. Sloan's motion for judgment as a matter of law on this claim.

**Disposition**

On the claim against Mr. Sloan for tortious interference with contract, we reverse and remand for a new trial. And on the claim of unjust enrichment, we reverse and remand with instructions to grant Mr. Sloan's motion for judgment as a matter of law. We otherwise affirm.[11]

---

[11]    The district court's judgment found that Mr. Sloan was jointly and severally liable for damages of $3,104,208.11. Given our opinion, Mr. Sloan would remain jointly and severally liable for $280,519 of that amount.

The district court also found Mr. Sloan individually liable for damages of $315,325. Our opinion leaves Mr. Sloan liable for an amount between $53,831 and $153,831. (The uncertainty arises because the assessment of the punitive damages award was based on both tortious

20

interference with contract and tortious interference with business relations, and we are reversing the judgment for tortious interference with contract.)