**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VICTOR CEJKA; JAMES WALKER;
STEVEN WASCHER; JAMIE LYTLE,

      Plaintiffs - Appellees/Cross-
      Appellants,

and

JENNIFER CROSS,

      Plaintiff,

v.

VECTRUS SYSTEMS CORPORATION,
f/k/a Exelis Systems Corporation,

      Defendant - Appellant/Cross-
      Appellee.

Nos. 18-1439 & 18-1459
(D.C. No. 1:15-CV-02418-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Plaintiffs Victor Cejka, Jamie Lytle, Steven Wascher, and James Walker

(plaintiffs) sued their former employer, Vectrus Systems Corporation (Vectrus).

Plaintiffs claimed they engaged in protected whistleblowing activity and alleged that,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

in retaliation, Vectrus wrongfully discharged them in violation of Colorado state law and 10 U.S.C. § 2409 (Supp. II 2008), a Department of Defense (DOD) whistleblower-protection statute. The district court granted summary judgment to Vectrus on three of the plaintiffs' § 2409 claims. The remaining claims were tried by a jury, which found for the plaintiffs. The district court affirmed the verdict after Vectrus filed two motions for a judgment as a matter of law and a motion for a new trial.

Cejka, Lytle, and Wascher appeal the district court's order granting summary judgment to Vectrus on their § 2409 claim. Because this order contradicts the plain language of § 2409, we reverse the district court's grant of summary judgment to Vectrus. And Vectrus appeals the district court's orders denying its motions for judgment as a matter of law for two reasons. First, it argues plaintiffs cannot bring Colorado wrongful-discharge claims because such claims are available only to at-will employees, which plaintiffs are not. Second, Vectrus argues that Wascher's and Walker's claims fail because they argued that they were constructively discharged, which requires resignation, and Wascher and Walker testified that they did not resign. Vectrus also appeals the district court's order denying its motion for a new trial, arguing that the jury heard military evidence that was irrelevant and unduly prejudicial. Because we reject Vectrus's arguments for the reasons explained below, we affirm the district court's orders denying Vectrus's posttrial motions.

2

**Background**

Plaintiffs formerly worked for Vectrus as security investigators on a military subcontract at Bagram Air Force Base (Bagram) in Afghanistan. Vectrus employed each plaintiff under a one-year contract, terminable by Vectrus for cause or for convenience with a 30-day notice. During their employment, each plaintiff reported to military officials that they believed Vectrus employees engaged in unlawful conduct. In response to these reports, the military raided Vectrus operations in Afghanistan in November 2013 and removed eight Vectrus employees. The next month, Vectrus terminated Cejka's and Lytle's employment and transferred Wascher and Walker from Bagram to forward operating bases that were rumored to be closing. Vectrus then gave Wascher and Walker the option of accepting a biometric-clerk position or accepting a layoff. Wascher and Walker chose to be laid off, effective June 1, 2014, and July 10, 2014, respectively.

Plaintiffs then filed a complaint against Vectrus, claiming that Vectrus violated (1) § 2409, a DOD whistleblower-protection statute, and (2) Colorado common law prohibiting wrongful termination in violation of public policy.[1] Relevant to this appeal, Vectrus moved for summary judgment on Cejka's, Lytle's, and Wascher's § 2409 claims, arguing that their claims fail because their separations occurred before § 2409's protections applied to the Vectrus subcontract under which

---

[1] Each plaintiff also brought an outrageous-conduct claim. The district court dismissed two of those claims and granted Vectrus summary judgment on the others.

they were employed. The district court agreed, granting Vectrus summary judgment on those three plaintiffs' § 2409 claims.

Walker's § 2409 claim and all four plaintiffs' state-law wrongful-discharge claims eventually were tried to a jury. During trial, military personnel described plaintiffs' reports, the military's investigation into Vectrus, and the resulting raid. The district court also admitted several military documents related to the investigation.

After plaintiffs set forth their evidence at trial, Vectrus made two motions for judgment as a matter of law under Federal Rule of Civil Procedure 50. Specifically, Vectrus argued that (1) all plaintiffs' wrongful-discharge claims fail because this doctrine applies only to at-will employees and plaintiffs were not at-will employees, and (2) Wascher's and Walker's wrongful-discharge claims, which were based on a constructive-discharge theory, fail because Wascher and Walker did not resign and instead Vectrus laid them off. The district court denied the motions and submitted the case to the jury.

The jury found for plaintiffs on all claims. Specifically, the jury found for all four plaintiffs on their state-law wrongful discharge claims, concluding they engaged in whistleblowing activity and that Vectrus knew of this activity. With respect to Cejka and Lytle, the jury found that Vectrus terminated them because of this whistleblowing activity. With respect to Wascher and Walker, the jury found that Vectrus constructively discharged them—that is, the jury found that that because of their whistleblowing activity, Vectrus made Wascher's and Walker's "working

4

conditions . . . so difficult or intolerable that [they] had no reasonable choice but to resign." App. vol. 35, 10,388, 10,392. For the same reasons, the jury also found for Walker on his § 2409 claim.

After the trial, Vectrus renewed its Rule 50 motions for a judgment as a matter of law and filed a motion for new trial under Federal Rule of Civil Procedure 59. In addition to the arguments it made in its initial Rule 50 motions, Vectrus argued that Walker's § 2409 claim should fail because he did not resign. Relevant to this appeal, Vectrus argued in its new-trial motion that the district court erred in permitting military personnel to testify and in admitting military documents. The district court denied all Vectrus's post-trial motions.

Cejka, Lytle, and Wascher appeal the district court's order granting summary judgment to Vectrus on their § 2409 claims. Vectrus appeals the district court's orders denying its motions for judgment as a matter of law and its motion for a new trial.

## Analysis

### I. Motion for Summary Judgment on Applicability of § 2409 to Plaintiffs

Plaintiffs argue that the district court erred in granting summary judgment to Vectrus on Cejka's, Lytle's, and Wascher's § 2409 claims. Plaintiffs, who worked on a military subcontract, brought a claim under § 2409, a whistleblower-protection law that provides protection to certain individuals who make a complaint "related to a [DOD] contract." § 2409(a). A version of § 2409 enacted in 2008 applied to "employee[s] of a contractor." *Id.* In 2013, Congress expanded the scope of

5

employees covered by § 2409 from "[a]n employee of a contractor" to "[a]n employee of a contractor or subcontractor." § 2409 (2012); *see also* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, sec. 827, § 2409, 126 Stat. 1632, 1833 (2013).

Vectrus filed a motion for summary judgment, arguing in part that § 2409 did not protect Cejka, Lytle, and Wascher at the time they separated from Vectrus. In ruling on the motion, the district court first determined that plaintiffs were "employees of a subcontractor, not a contractor," and concluded that the 2008 version of the statute therefore did not apply to plaintiffs. Supp. App. vol. 3, 461. Next, the district court determined that the 2013 version of the statute—which explicitly includes subcontractors—likewise did not apply. Vectrus employed plaintiffs under a contract it had with a DOD prime contractor—that is, an entity that had a contract directly with the DOD. And Vectrus and the prime contractor did not modify their contract to incorporate the amended statutory language until June 17, 2014. Because Cejka, Lytle, and Wascher separated from Vectrus before this date, the district court determined that they were not protected by the 2013 version of § 2409. Therefore, the district court granted Vectrus summary judgment on Cejka's, Lytle's, and Wascher's § 2409 claims.

We review de novo an order on summary judgment, "applying the same standard as the district court." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018). Summary judgment is appropriate if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). When summary judgment turns on a question of

6

statutory interpretation, we interpret the statute—here § 2409 (Supp. II 2008)—

de novo. *See Elephant Butte Irrigation Dist. of N.M. v. U.S. Dep't of Interior*, 538

F.3d 1299, 1301 (10th Cir. 2008). Thus, we will reverse the district court if its order

is based on an incorrect interpretation of § 2409.

On appeal, Cejka, Lytle, and Wascher do not challenge the district court's

determination that the 2013 amendment applied to Vectrus's subcontract only after

they left Vectrus. Instead, they argue that, based on its plain meaning, the 2008

version of the statute protected them. *See Edwards v. Valdez*, 789 F.2d 1477, 1481

(10th Cir. 1986) (explaining that generally, a statute's "literal language . . .

controls"). Specifically, plaintiffs argue that the 2008 statute covered them because

(1) Vectrus was a prime military contractor and (2) they made a complaint "related to

*a* [DOD] contract." § 2409(a) (emphasis added). First, plaintiffs note that § 2409

defined a "contractor" as "a person awarded a contract or a grant with an agency."

§ 2409(e)(4) (Supp. II 2008). And Vectrus stipulated that when it employed

plaintiffs, it "held prime contracts with certain agencies within the [DOD]." Supp.

App. vol. 2, 331. Thus, plaintiffs reason, Vectrus was a contractor per § 2409 because

it was "awarded a contract" with the DOD. § 2409(e)(4) (Supp. II 2008). And

because plaintiffs were employed by Vectrus, they were "employee[s] of a

contractor." § 2409(a) (Supp. II 2008).

Next, plaintiffs argue that they made a complaint "*related to a* [DOD]

contract," even if it was not the contract under which they were employed. § 2409(a)

(Supp. II 2008) (emphasis added). In doing so, they point to guidance from the

7

Supreme Court stating that "[t]he ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)); *see also* Related, *Black's Law Dictionary* (11th ed. 2019) (defining "related" as "[c]onnected in some way; having relationship to or with something else"). And, plaintiffs argue, reporting what they believed to be security violations regarding Vectrus's subcontract with a DOD prime contractor "[stood] in some relation" to that prime contractor's contract with the DOD. *Morales*, 504 U.S. at 383 (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)).

Plaintiffs also point out that the district court's reasoning depends on an interpretation of the 2008 version of § 2409(a) that reads additional text into the statute. That is, the district court interpreted the statute to cover only the employees of a contractor working on a contract with a covered agency. But as plaintiffs note, the 2008 version made no such limitation: it covered "employee[s] of a contractor" with no further specifications. § 2409(a). And "[w]e do not—we cannot—add provisions to a federal statute." *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010).

Vectrus waived all but one of its arguments in reply because it "incorporate[d]" its briefing on the issue below "by reference." Aplt. Rep. Br. 43; *see United States v. Patterson*, 713 F.3d 1237, 1250 (10th Cir. 2013) (explaining that party "waived the claim" when party "fail[ed] to develop any argument on th[e]

8

claim at *this court*" and instead incorporated briefing below by reference). In its appellate briefing, Vectrus argues that if the 2008 version of § 2409 applied to plaintiffs even though they worked on a subcontract, then certain aspects of the 2013 amendment would have been unnecessary. But this argument misunderstands the effect of post-enactment legislative history. Although an amendment might inform us of the perspective of the amending 2013 Congress, it says nothing about the meaning of the 2008 statute. Indeed, "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation" because it "could have had no effect on the congressional vote." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (second quoting *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008)). Accordingly, the 2013 amendments have no bearing on our interpretation of the 2008 version of § 2409. We therefore reject Vectrus's argument.

We conclude that the plain language of § 2409 applies to plaintiffs. Specifically, as described above, because Vectrus was a "contractor," plaintiffs were "employee[s] of a contractor," and they made a complaint "related to a [DOD] contract." § 2409(a), (e)(4) (Supp. II 2008). And Vectrus's argument about the 2013 amendments do not disturb this plain language. *See Edwards*, 789 F.2d at 1481. Thus, the district court erred in concluding that Cejka's, Lytle's, and Wascher's whistleblowing activity was not protected by § 2409. Accordingly, we reverse the district court's order granting summary judgment to Vectrus on Cejka's, Lytle's, and Wascher's § 2409 claims and remand this issue to the district court.

## II.     Motions for Judgment as a Matter of Law on Wrongful-Discharge Claims

9

After trial, Vectrus filed two renewed motions for judgment as a matter of law under Rule 50(b), arguing that (1) all plaintiffs' wrongful-discharge claims fail because Colorado's wrongful-discharge doctrine does not apply to at-will employees and plaintiffs were at-will employees, and (2) Wascher's and Walker's wrongful-discharge claims fail because they argued they were constructively discharged but testified that they did not resign—and resignation is a required element of constructive discharge. In two separate orders, the district court denied these motions, and Vectrus appeals.

We review the denial of a motion for a judgment as a matter of law de novo, "applying the same standard as the district court." *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1126 (10th Cir. 2012). Thus, we must affirm the denial unless Vectrus demonstrates that a "reasonable jury would not have a legally sufficient evidentiary basis to find for" plaintiffs. Fed. R. Civ. P. 50(a)(1). In doing so, we "construe the evidence and inferences most favorably to the nonmoving party, [the plaintiffs,] and refrain from weighing the evidence, passing on the credibility of witnesses, or substituting our judgment for that of the jury." *Bannister*, 692 F.3d at 1126 (quoting *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1503 (10th Cir. 1994)).

A.    **Availability to Non-At-Will Employees**

Vectrus argues that the district court erred in denying its Rule 50 motion regarding all plaintiffs' Colorado wrongful-discharge claims because only at-will employees can bring wrongful-discharge claims and plaintiffs were not at-will.

10

In denying the motion below, the district court analyzed *Martin Marietta Corp. v. Lorenz*, where the Colorado Supreme Court first recognized a wrongful-discharge claim for termination in violation of public policy. 823 P.2d 100, 108 (Colo. 1992). Specifically, *Martin Marietta* stated:

> In light of Colorado's long-standing rule that a contract violative of public policy is unenforceable, it is axiomatic that a contractual condition, such as the terminability condition of an at-will employment contract, should also be deemed unenforceable when violative of public policy. There is no question that the manifest public policy of this state is that neither an employer nor an employee should be permitted to knowingly perpetrate a fraud or deception on the federal or state government. A corollary of this policy is that an employee, *whether at-will or otherwise*, should not be put to the choice of either obeying an employer's order to violate the law or losing his or her job.

*Id.* at 109 (emphasis added). Based largely on this passage, the district court determined that non-at-will employees could bring Colorado wrongful-discharge claims.

On appeal, Vectrus first argues that only at-will employees can bring Colorado wrongful-discharge claims because the Colorado Supreme Court describes wrongful discharge as an exception to at-will employment. To be sure, wrongful discharge is an exception to at-will employment, and the Colorado Supreme Court has described it as much. *See, e.g.*, *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997) (describing wrongful discharge as a "judicially crafted exception[]" to at-will employment). But the fact that at-will employees can bring wrongful-discharge claims despite their at-will employment does not mean that non-at-will employees cannot bring such claims. Indeed, Vectrus does not cite to a single

11

Colorado case affirmatively holding that non-at-will employees cannot bring a wrongful-discharge claim. Instead, it cites only to cases involving at-will employees.[2] *See Coors Brewing Co.*, 978 P.2d at 666-67; *Crawford Rehab. Servs., Inc.*, 938 P.2d at 546–47. As such, those courts had no reason to consider whether non-at-will employees could bring wrongful-discharge claims for violation of public policy. Thus, these cases' descriptions of wrongful discharge do not limit the scope of who may bring wrongful discharge claims.

Vectrus next argues that the district court erred because it ignored our decision in *Doll v. U.S. West Communications, Inc.*, 60 F. App'x 250 (10th Cir. 2003) (unpublished). There, after a pro se appeal, we upheld a district court opinion ruling that "a [Colorado] retaliatory-discharge claim is available only to at-will employees." *Id.* at 251–52. We did not independently analyze the issue, and instead "affirm[ed] for substantially the reasons expressed by the district court." *Id.* at 252. The district court in *Doll* determined that an employee covered by a collective bargaining agreement (CBA) could not bring a Colorado wrongful-discharge claim because "such a wrongful discharge claim is an exception to the at-will doctrine." *Doll v. U.S.*

---

[2] Neither *Crawford* nor *Coors* explicitly states that the plaintiffs were employed at will. But the cases' analyses imply that they were at-will employees. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (explaining definition of at-will employment); *Crawford Rehab. Servs., Inc.*, 938 P.2d at 546–47 (explaining significance of being employed at-will). Moreover, if the employees in these cases were not at-will, then these cases would provide further evidence that non-at-will employees can bring wrongful-discharge claims.

*W. Commc'ns, Inc.*, 85 F. Supp. 2d 1038, 1046 (D. Colo. 2000), *aff'd in part*, 60 F. App'x 250.

Because *Doll* is unpublished, it can be persuasive, but not binding. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1. And there is good reason to find *Doll* unpersuasive and deviate from its holding. In *Doll*, the district court reasoned that "no Colorado state court case has ever addressed . . . whether a party to a CBA can assert [a wrongful-discharge] claim." *Doll*, 85 F. Supp. 2d at 1046. But in fact, a Colorado court had addressed this issue prior to the panel's decision in *Doll*. Specifically, in *Lathrop v. Entenmann's, Inc.*—which *Martin Marietta* cited favorably—the court recognized a wrongful-discharge claim brought by a CBA-covered employee. *See Martin Marietta*, 823 P.2d at 108; *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367, 1372–73 (Colo. App. 1989). In doing so, the court in *Lathrop* explicitly rejected the employer's argument that "such a claim should be barred if the employment relationship is governed by a collective bargaining agreement." *Lathrop,* 770 P.2d at 1373. It reasoned that the wrongful-discharge doctrine is "based solely upon [Colorado's] public policy" and "the duty of the employer to refrain from retaliation in violation of a state's public policy does not find its source in any private contract." *Id.*; *see also Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 45 (Colo. App. 1993) (upholding district court's order denying employer summary judgment on CBA-covered employee's wrongful-discharge claim). In discussing wrongful discharge, neither the district

13

court nor appellate court in *Doll* discussed *Lathrop* or *Ferris*.[3] *See Doll*, 60 F. App'x at 252; *Doll*, 85 F. Supp. 2d at 1046–47. Accordingly, we decline to follow *Doll* here.

Plaintiffs argue that *Lathrop* and *Ferris*, among other cases, show that Colorado wrongful discharge is not limited to at-will employees. For the reasons discussed above, we agree. Because we conclude that non-at-will employees may bring wrongful-discharge claims, we need not determine whether plaintiffs were at-will employees. Accordingly, we affirm the district court's order denying Vectrus's motion for judgment as a matter of law on this issue.

## B.     Constructive Discharge

Vectrus argues that even if plaintiffs could file wrongful-discharge claims, Walker's § 2409 claim and Wascher's and Walker's wrongful-discharge claims fail because (1) Wascher and Walker relied exclusively on a constructive-discharge theory, which requires that employees resign, and (2) they did not resign because they were laid off. In response, Wascher and Walker contend that Vectrus's argument defines "resignation" too narrowly. Aplee. Br. 32. Alternatively, Wascher and Walker urge us to uphold the jury verdict because Vectrus "concede[d] that they were actually terminated" and "the 'whole point' of the constructive-discharge doctrine is that it is the functional equivalent of an actual termination." Aplee. Br. 38.

Below, the jury found that Vectrus constructively discharged Wascher and Walker because they "proved by a preponderance of the evidence that [their]

---

[3] It is worth noting that the plaintiff in *Doll* appealed pro se. *See Doll*, 60 F. App'x at 251.

14

separation[s] from Vectrus constituted a resignation from employment" and that

Vectrus made their "working conditions so . . . intolerable that [they] had no

reasonable choice but to resign."[4] App. vol. 35, 10,388, 10,392; *see also Wilson v.*

*Bd. of Cty. Comm'rs*, 703 P.2d 1257, 1259 (Colo. 1985) (noting that employee is

constructively discharged if employer "makes or allows an employee's working

conditions to become so difficult or intolerable that the employee has no other choice

but to resign"). The jury also found that this constructive discharge was wrongful

because Wascher and Walker reported conduct that they "reasonably believed was

unlawful" and that Vectrus made their working conditions intolerable because of

those reports. App. vol. 35, 10,388, 10,392; *see also Krauss v. Catholic Health*

*Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003) (explaining that

discharge is wrongful when it "contravenes a clear mandate of public policy"). After

trial, Vectrus filed a Rule 50 motion, arguing that the jury's constructive-discharge

finding was against the weight of the evidence. *See* Fed. R. Civ. P. 50 (explaining

that court may grant "judgment as a matter of law" to party if "a reasonable jury

---

[4] The district court explicitly instructed the jury on resignations versus layoffs. Specifically, jury instruction number 30 read:

> You have heard that just before their separations of employment from Vectrus, Plaintiffs Walker and Wascher were informed that their positions were to be "de-scoped," and Vectrus offered Walker and Wascher positions as biometric clerks. You will decide, based on the evidence presented, whether Walker's and Wascher's decisions to decline the positions constituted resignations (as opposed to layoffs) from employment.

App. vol. 35, 10,433.

15

would not have a legally sufficient evidentiary basis to find for the [non-moving] party").

The district court denied this motion. First, it found that "there was ample evidence at trial of [p]laintiffs' [intolerable] working conditions." App. vol. 37, 10,852. Next, the court rejected Vectrus's argument that Wascher's and Walker's testimony that they were laid off was dispositive, stating that "whether [p]laintiffs resigned is a quintessential jury question." App. vol. 37, 10,850. And the district court found sufficient evidence for a jury to determine that Wascher and Walker resigned. For example, the district court noted that both men signed a job offer declination form stating that "I decline the conditions of employment as stated above, with the understanding that it will result in separation and demobilization." App. vol. 37, 10,851. Moreover, in an exit questionnaire, Vectrus asked Wascher his "primary reason for leaving," and Wascher responded "[p]ersonal issues/reasons." App. vol. 37, 10,851.

The district court then determined that constructive discharge does not "turn on the ultimate mechanical act of whether the employer or the employee makes the final move." App. vol. 37, 10,854. Instead, the district court concluded, Colorado courts consider resignation in a broader context and focus on whether the separation of employment was voluntary. Thus, because it determined there was ample evidence that Wascher's and Walker's separations from employment were not voluntary, the district court denied Vectrus's Rule 50 motion. Applying de novo review, we must affirm this denial unless Vectrus demonstrates that a "reasonable jury would not have

16

a legally sufficient evidentiary basis to find for" plaintiffs. Fed. R. Civ. P. 50(a)(1); *see also Bannister*, 692 F.3d at 1126.

In attempting to make this demonstration, Vectrus first notes that "[t]o prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer [that] makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice *but to resign*." *Wilson*, 703 P.2d at 1259 (emphasis added). Thus, Vectrus contends, an employee who did not explicitly resign cannot bring a constructive-discharge claim. But the cases Vectrus relies on do not address the nuanced situation before us—where Wascher and Walker accepted a layoff in lieu of a demotion. In one of those cases, the employee explicitly resigned, and the definition of "resignation" was not at issue. *See Green v. Brennan*, 136 S. Ct. 1769, 1774 (2016). So that case tells us little about whether the definition of "resignation" is limited to instances where an employee explicitly resigns. In the other cases Vectrus relies on, employees were unable to bring constructive-discharge claims because their employers explicitly terminated them.[5] *See Jackson v. Dillard's Dep't Stores, Inc.*, 92 F. App'x 583, 588 n.5 (10th Cir. 2003) (unpublished) (holding that

---

[5] Vectrus also cites to *Cummings v. Brookhaven Science Associates, LLC*, No. 11 CV 1299 DRH ETB, 2011 WL 6371753 (E.D.N.Y. Dec. 20, 2011) (unpublished) and *Valenti v. Carten Controls Inc.*, No. CIV. 3:94CV1769 AHN, 1997 WL 766854 (D. Conn. Dec. 4, 1997) (unpublished). As these cases are district court opinions from other circuits, they hold little persuasive value here. This is likewise true for Vectrus's reliance on Justice Thomas's dissent in *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004).

17

employee could not sustain her constructive-discharge claim because she "did not resign; she was terminated"); *Koinis v. Colo. Dep't of Pub. Safety*, 97 P.3d 193, 196 (Colo. App. 2003) (declining to find constructive discharge when "complainant's employment had already been terminated when he submitted his letter of resignation"). Accordingly, these cases are inapt for the more nuanced situation Wascher and Walker faced.

Here, Vectrus gave Wascher and Walker the option of accepting a demotion or being laid off, and they chose to be laid off. And when (1) an employer gives an employee a choice between a demotion and separation of employment and (2) the employee choses separation of employment, persuasive authority[6] indicates that the employee has resigned within the meaning of Colorado's constructive-discharge law. For example, in *James v. Sears, Roebuck & Co.*, plaintiffs successfully brought an Age Discrimination in Employment Act (ADEA) constructive-discharge claim after their employer pressured them to accept an early retirement package by threatening them with a demotion, among other things. 21 F.3d 989, 993–94 (10th Cir. 1994); *see also Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 175 (10th Cir. 1986) (permitting

---

[6] As this is a Colorado state-law claim, Colorado substantive law applies. Where, as here, there is no decision on the issue from the Colorado Supreme Court, we must "predict" how the Colorado Supreme Court could rule. *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). In *Wilson*, an early Colorado constructive-discharge case, the Colorado Supreme Court noted that "[t]he doctrine of 'constructive discharge' has been developed largely through the federal courts" and relied almost exclusively on federal law when establishing Colorado's definition of constructive discharge. 703 P.2d at 1259. Thus, we consider federal constructive-discharge law persuasive here.

ADEA constructive-discharge claim when employer told employee to accept a demotion or "leave" and employee left). These cases demonstrate that employees can resign for the purposes of constructive-discharge law when they choose their separation of employment—even if they did not explicitly resign. Thus, the fact that Wascher and Walker did not expressly resign does not automatically mean they did not satisfy the resignation element of a constructive-discharge claim.

Vectrus next argues that even if separation in lieu of demotion can sometimes serve as the basis of a constructive discharge claim, it does not do so here. Specifically, it argues that this case does not present the "typical situation in which an employer demotes an employee . . . and the employee resigns rather than accept the demotion" because Wascher's and Walker's security investigator positions were eliminated by the prime contractor—meaning that Vectrus played no role in the decision to lay them off. Aplt. Rep. Br. 16. And, Vectrus continues, its offers of biometric-clerk positions were helpful, not harmful, to Wascher and Walker because it could have not offered them another position. Thus, Vectrus concludes, Wascher and Walker "did not 'refuse[] a demotion'" and instead "refused an offer of continued employment." Aplt. Rep. Br. 19 (alteration in the original).

But Wascher and Walker contend that even if their positions were eliminated by the prime contractor, Vectrus nevertheless deliberately targeted them for a layoff by "sending them to bases that would soon be closing." Aplee. Br. 12. And the jury heard testimony to this effect. For example, an employee-relations specialist at Vectrus testified that Vectrus sent Wascher and Walker to bases that were rumored to

19

be closing. Further, Wascher testified that before his and Walker's transfers, other employees volunteered to go to those bases, but Vectrus nevertheless transferred him and Walker. And Walker testified that after his transfer, Vectrus asked for volunteers to transfer back to Bagram and that he was not transferred back, despite volunteering. Therefore, contrary to Vectrus's assertion, there is evidence in the record from which a reasonable jury could find that Vectrus targeted Wascher and Walker for layoff.

Moreover, Vectrus's argument assumes that the only "deliberate action" Vectrus took to create an intolerable work environment was to eliminate their positions. *Wilson*, 703 P.2d at 1259. To the contrary, Wascher and Walker testified that Vectrus management called them "troublemaker[s]" and "traitors," threatened to terminate them, transferred them to more dangerous forward operating bases, and ignored their requests to return to Bagram despite openings. App. vol. 15, 4275, 4277. And this evidence supports the jury's finding that Wascher and Walker "proved by a preponderance of the evidence that [their] working conditions were so difficult or intolerable that [they] had no reasonable choice but to resign." App. vol. 35, 10,388, 10,392. Thus, even if Vectrus had no choice but to eliminate Wascher's and Walker's positions, the record nevertheless supports a jury finding that Vectrus deliberately subjected Wascher and Walker to conditions such that they felt they had no reasonable option but to leave Vectrus. Fed. R. Civ. P. 50.

Vectrus next argues that Wascher's and Walker's testimony that they did not resign demonstrates that the jury did "not have a legally sufficient evidentiary basis to find" that Vectrus constructively discharged them. *Id.* In doing so, Vectrus

highlights portions of Wascher's and Walker's testimony in which they admit that they were laid off. For example, Walker responded, "[y]es sir" to the question "[y]ou didn't quit; right? Vectrus laid you off." App. vol. 25, 7391. And Wascher agreed that "[t]he exact reason [he] left was that [his] position was phased out." App. vol. 15, 4424. Vectrus also notes that in his unemployment benefit application, Wascher stated that he was unemployed because his position was "phased out." *Id.* at 4423.

But the record is not as unequivocal as Vectrus suggests. For one thing, when declining the biometric-clerk position, both Wascher and Walker signed a form stating, "I decline the conditions of employment as stated above, with the understanding that it will result in separation of employment and demobilization." App. vol. 35, 10,317, 10,342. For another, a Vectrus HR employee testified that Wascher "voluntarily demobilized or left." App. vol. 29, 8432. Moreover, Wascher's and Walker's testimony itself was not so one-sided. For example, Wascher agreed that he "left" Vectrus and explained that he did so because the "conditions there just became unbearable." App. vol. 15, 4218–19. And, on cross-examination, Wascher initially denied that he was laid off and agreed only after the attorney for Vectrus framed being "laid off" as the alternative to being "fired for misconduct." *Id.* at 4418–19. For his part, Walker responded to the question "when did you terminate your employment, sir?" with "I believe it was the 14th of July," implying that he agreed that he terminated his employment. App. vol. 25, 7327.

21

Relying primarily on our unpublished order in *Romero v. Helmerich & Payne International Drilling Co.*, Vectrus argues that "whether [an employee] resigned is uniquely within [the employee's] knowledge" and that the district court "should have accepted" Walker's and Wascher's "testimony as true." 768 F. App'x 838, 842 (10th Cir. 2019) (unpublished). But unlike in *Romero*—where it was "undisputed" that the employee was terminated after refusing to sign a disciplinary write-up— Vectrus was not so straightforward and gave Wascher and Walker the choice between a demotion and a layoff. *Romero*, 768 F. App'x at 840. Further, the *Romero* plaintiff "testified that [his employer] fired him from his job and that he did not resign or quit." *Id.* Here, in contrast, Wascher's and Walker's testimony was not so unequivocal. Thus, viewing the record as a whole and "constru[ing] the evidence and inferences most favorably to" Wascher and Walker —as we must when reviewing an order on a Rule 50 motion—we conclude that the jury had sufficient evidence to find that Wascher and Walker resigned as required by constructive-discharge law.[7]

*Bannister*, 692 F.3d at 1126 (quoting *Magnum Foods, Inc.*, 36 F.3d at 1503).

---

[7] Wascher and Walker argue that we should affirm because their testimony did not amount to judicial admissions, which are "formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (quoting *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986)). But the issue is whether the jury had sufficient evidence to find that Wascher and Walker resigned, which is not dependent on whether Wascher's and Walker's testimony amounted to judicial admissions. *See* Fed. R. Civ. P. 50. Thus, this argument is irrelevant, and we do not rely on it for our conclusion.

22

Accordingly, we affirm the district court's order denying Vectrus's motion for judgment as a matter of law based on Vectrus's constructive-discharge argument.[8] As such, we need not address Wascher and Walker's alternative argument that we may uphold the jury verdict because they were actually terminated.

## III. Motion for a New Trial on Evidentiary Rulings

Vectrus argues that the district court erred by denying its Rule 59 motion for a new trial regarding the admissibility of military documents and testimony of three military witnesses.

Prior to trial, Vectrus filed a motion in limine, requesting that the district court exclude (1) "reference to the content of the [p]laintiffs' alleged complaints and reports of unlawful activity," (2) "reference to the . . . [m]ilitary's actions in response to [p]laintiffs' reports of unlawful activity," and (3) "the testimony of any military

---

[8] This affirmance applies to both Walker's state-law constructive discharge claim and his § 2409 claim. Even if a different standard for determining constructive discharge applied to § 2409 claims, Vectrus explicitly waived its constructive-discharge argument with respect to Walker's federal claim. "If a ground is omitted from a [Rule 50(a)] motion . . . the ground cannot be asserted in a [Rule 50(b)] motion or in an appeal." *Advanced Recovery Sys. v. Am. Agencies*, 923 F.3d 819, 825 (10th Cir. 2019). Here, Vectrus did more than just fail to raise its constructive-discharge argument with respect to Walker's federal claim—it explicitly acknowledged that its Rule 50(a) motion did not apply to this claim. For example, when the trial judge was orally ruling on Vectrus's Rule 50(a) motion, Vectrus's attorney stated that if the court granted its motion, "Walker's 10 U.S.C. [§] 2409 claim would remain." App. vol. 29, 8476. And in Vectrus's supplemental written support for its oral Rule 50(a) motion, Vectrus specified that the Rule 50(a) motion applies to Walker's "first claim for wrongful discharge in violation of public policy" but it did not mention his federal claim. App. vol. 32, 9477. Thus, Vectrus cannot now assert the constructive-discharge argument with respect to Walker's federal claim on appeal. *See Advanced Recovery Sys.*, 923 F.3d at 825.

witnesses at trial." App. vol. 9, 2668–69. In this motion, Vectrus offered to stipulate that plaintiffs engaged in activity protected by Colorado wrongful-discharge law and § 2409. The district court denied Vectrus's motion. At the start of the trial, the district court gave a limiting instruction regarding the permissible use of the military evidence. During trial, military personnel described the military investigation into Vectrus and the resulting raid. The district court also admitted several military documents, including an internal legal memorandum about the scope of federal whistleblower protection law and a document containing allegations regarding Vectrus employees' wrongdoing, including drug use and possession of child pornography. Vectrus objected to the military testimony and to these exhibits, and the district court overruled these objections.

After the trial, Vectrus filed a Rule 59 motion for a new trial, arguing that the district court erred in admitting the military testimony and exhibits. The district court denied this motion. In doing so, it determined that evidence regarding the substance of the plaintiffs' complaints and the military's response was relevant to explain the "extent and context of the risk that [p]laintiffs' actions potentially posed to Vectrus." App. vol. 37, 10,869. The district court further concluded that "[i]t would have been impossible for the jury to understand this case unless they heard at least some content of the whistleblowing complaints, along with the impact that the complaints had on Vectrus." *Id.* at 10,870. The district court also determined that its limiting instruction "adequately addressed [d]efendant's concerns" regarding the military evidence. *Id.*

24

at 10,869. Vectrus appeals the district court's order denying its motion for a new trial.

We review this denial for abuse of direction. *Weaver v. Blake*, 454 F.3d 1087, 1091 (10th Cir. 2006). Because Vectrus's "motion for a new trial assert[ed] that the district court erred in determining the admissibility of evidence, the verdict must stand unless the district court 'made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Id.* (quoting *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993)). Even if the district court's evidentiary ruling was in error, we should grant a new trial only if we can "reasonably conclude[] . . . there would have been a contrary result" without the error. *Id.* (quoting *Hinds*, 988 F.2d at 1049).

Vectrus first argues that the district court erred in admitting the documents containing allegations regarding Vectrus employees because plaintiffs did not lay a proper foundation. The district court admitted these documents as properly authenticated business records. *See* Fed. R. Evid. 803(6) (requiring in part that custodian or "qualified witness" introduce record made by someone with knowledge "in the course of a regularly conducted activity"). Vectrus contends that plaintiffs introduced these documents through a Vectrus employee, David Cleary, who did not author the document and could not otherwise testify that the evidence met the elements of a business elements of Federal Rule of Evidence 803(6). But "there is no requirement that the party offering a business record produce the author of the item." *FDIC v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986). Moreover, Cleary testified

that he was familiar with the documents, knows the author, was part of the investigation that produced the documents, and that making these types of documents is part of the military's "regular practice." App. vol. 16, 4599. Thus, the district court did not err in admitting these documents under Rule 803(6).

Vectrus next argues that the district court erred by admitting irrelevant evidence. *See* Fed. R. Evid. 402. Specifically, Vectrus contends that because it offered to stipulate that plaintiffs engaged in protected whistleblowing activity, then "there was *no* relevance to the details of the plaintiffs' whistleblowing reports" or to any of the military evidence. Aplt. Br. 40. For this evidence to have been irrelevant, it must not have had "any tendency to make a fact" that is "of consequence in determining the action" any "more or less probable." Fed. R. Evid. 401. Here, to prove wrongful discharge, plaintiffs had to prove that "Vectrus personnel" terminated or constructively discharged them "*because* [they] made the[ir whistleblowing] reports." App. vol. 35, 10,382, 10,385, 10,389, 10,393 (emphasis added). That is, plaintiffs had to prove that Vectrus was motivated by the plaintiffs' whistleblowing. And the military evidence is relevant to Vectrus's potential motivation. For example, the military's response to the plaintiffs' complaints—an "early morning surprise 'raid,' effectively arresting eight of [Vectrus's] employees including senior supervisory personnel"—posed a risk to "Vectrus's contractual relationships with the United States military" and therefore to Vectrus's "corporate existence." App. vol. 37, 10,868–69. Such risk likely makes it "more . . . probable" that Vectrus took adverse action against plaintiffs because of their reporting. Fed. R. Evid. 401; *see*

26

*also McCue v. Kan., Dep't of Human Res.*, 165 F.3d 784, 789 (10th Cir. 1999) (admitting evidence of employee's sexual harassment complaint even though employer stipulated that employee engaged in protected activity because complaint was relevant to another aspect of employee's claim). And we cannot say that the district court abused its discretion in concluding as much. *Weaver*, 454 F.3d at 1091. Thus, we are not persuaded by Vectrus's relevancy argument.

Finally, Vectrus argues that the district court should have excluded the military evidence because the "probative value" of the evidence was "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. It asserts that prejudice arose from (1) the sensational and salacious details of the allegations and (2) the external validation that military approval may have bestowed upon plaintiffs. But the district court gave a limiting instruction, telling the jury to "consider [the military] evidence for the limited purpose of determining whether [p]laintiffs have established the elements of their claims including whether [Vectrus] was aware of [p]laintiffs' reports and whether the reports and their consequences motivated Vectrus to terminate or constructively terminate the [p]laintiffs." App. vol. 37, 10,869. And we "generally presume that juries follow the instructions given to them notwithstanding what has been said in court." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013). As such, we presume that the jury was not influenced by aspects of the military evidence and testimony beyond the claims at issue. Thus, the risk of prejudice did not outweigh the evidence's probative value. Fed. R. Evid. 403. And, even if the district court did err in admitting the evidence,

27

Vectrus has not demonstrated that "there would have been a contrary result" had the error not occurred. *Weaver*, 454 F.3d at 1091 (quoting *Hinds*, 988 F.2d at 1049).

We thus affirm the order denying Vectrus's motion for a new trial.

## Conclusion

For the reasons stated above, we reverse the district court's order granting summary judgment to Vectrus on Cejka's, Lytle's, and Wascher's § 2409 claims and remand to the district court for further proceedings. We affirm the district court's orders denying Vectrus's motions for judgment as matter of law and for a new trial.[9]


Entered for the Court


Nancy L. Moritz
Circuit Judge

---

[9] As a final matter, we grant the motion to seal a portion of the supplemental appendix as these portions contain "financial information" and military "contracts." *Suture Express, Inc. v. Owens & Minor Distrib., Inc.*, 851 F.3d 1029, 1047 (10th Cir. 2017).